**UNITED STATES of America, Plaintiff–Appellee,**

v.

**William M. McCALEB, Defendant–Appellant.**

No. 89–2229.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 13, 1990.

Decided July 23, 1990.

Bradley W. Murphy, Asst. U.S. Atty., Peoria, Ill., for plaintiff-appellee.

Ronald E. Halliday, Parker & Halliday, Peoria, Ill., for defendant-appellant.

Before RIPPLE and MANION, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

RIPPLE, Circuit Judge.

William McCaleb was charged with violating 18 U.S.C. § 871 by making a threat against the life of the President. He pleaded guilty to this charge on January 25, 1989. He was sentenced on June 6, 1989 to sixty months incarceration and fined $25,-050. Mr. McCaleb now appeals the district court's calculation of his sentence under the Sentencing Guidelines. We affirm the judgment of the district court.

I

FACTS

On or about January 21, 1988, Mr. McCaleb mailed a letter to the Secret Service informing them that he was going to attempt to kill the President. The letter was handwritten and signed by Mr. McCaleb. This was not the first time that Mr. McCaleb had threatened the life of the President. He had been convicted of this same offense in 1970, 1974, and 1979.

At sentencing, the government asserted that Mr. McCaleb's actions demonstrated that he intended to carry out his threat. Shortly after mailing the 1988 letter, Mr. McCaleb removed large sums of money from his bank account. Furthermore, Mr. McCaleb recently had been released from prison for a felony gun possession conviction and had failed to comply with his mandatory release supervision. Approximately three months after mailing the letter and dropping out of sight, he was apprehended, unarmed, at a bus terminal in Washington, D.C.

To counter the evidence of intent to carry out the threat, defense counsel introduced the testimony of a psychiatrist, Dr. Marvin Ziporyn. Dr. Ziporyn testified that the defendant had been obsessed with the prospect of nuclear war. This obsession began in 1946 when the defendant, as a young soldier stationed on the Marshall Islands, witnessed the nuclear testing at the Bikini Islands. Dr. Ziporyn further testified that, in his opinion, Mr. McCaleb had no intention of carrying out the threat, and that writing the letter "relieve[d] the pressure" caused by the obsession and allowed the defendant to "blow[ ] off steam." R. 34 at 19.

The district court sentenced Mr. McCaleb to sixty months in prison. The path leading to this sentence has two branches. Initially, the district court calculated a base level of twelve for making threatening communications, Sentencing Guidelines § 2A6.1, and added six levels for evidencing intent to carry out the threat. Section 2A6.1(b)(1).[1] The court granted a two level reduction for acceptance of responsibility, putting the offense level at 16.

The court then considered whether the defendant was a career criminal, which in this case would set the offense level at 17. Section 4B1.1. Determining that the

crimes committed by Mr. McCaleb were "crimes of violence," the court concluded that sentencing as a career criminal would be appropriate. The final calculation included an upward departure of three levels because the object of the threat was the President. Application Note 2 to § 3A1.2. Combined with Mr. McCaleb's criminal history category of VI,[2] his sentence fell in a range requiring a sentence of 70–87 months incarceration. This range exceeded the statutory maximum sentence of sixty months. 18 U.S.C. § 871. Accordingly, the court properly sentenced Mr. McCaleb to the statutory maximum term.[3]

## II

## ANALYSIS

Mr. McCaleb argues that the district court miscalculated his sentence. A defendant may appeal a sentence by claiming that the district court imposed a sentence as a result of an incorrect application of the guidelines. 18 U.S.C. § 3742(a)(2). Having examined the application of the guidelines to this case, we conclude that the district court correctly reached the sentence it imposed.

### A.  Calculation of Sentence

The district court arrived at its sentence by classifying Mr. McCaleb as a career offender and then adding a three level enhancement due to the official position of the victim. In order to classify the defendant as a career offender under the guidelines, the court must address three criteria: (1) the defendant must be at least eighteen at the time of the most recent offense, (2) the most recent offense must be a felony that is a crime of violence or involves a controlled substance, and (3) the defendant must have at least two prior convictions

---

1.  The guideline reads in pertinent part:

> § 2A6.1  *Threatening Communications*
> (a) Base Offense Level: 12
> (b) Specific Offense Characteristics
> (1) If the defendant engaged in any conduct evidencing an intent to carry out such threat, increase by 6 levels.

2.  The guidelines set the criminal history category for all career criminals at VI. § 4B1.1.

3.  The guidelines provide that "[i]f application of the guidelines results in a sentence above the maximum authorized by statute for the offense of conviction, the statutory maximum shall be the guideline sentence." § 5G1.1.

involving either a crime of violence or a controlled substance. Section 4B1.1.

**1.**

■ Mr. McCaleb first argues that the district court erred in applying the career offender guideline to his case because his offense was not a "crime of violence." The guideline in effect at the time of Mr. McCaleb's sentencing defined "crime of violence" by reference to 18 U.S.C. § 16. Section 4B1.2(1).[4] In turn, the statute defined "crime of violence" to mean "an offense that has as an element the use, attempted use, *or threatened use* of physical force against the person or property of another." 18 U.S.C. § 16(a) (emphasis supplied). If there were any doubt what Congress meant, the legislative history makes clear that Congress intended to include in the definition of "crime of violence" any threat of violence, including "threatened or attempted simple assault or battery on another person." H.R.Rep. No. 1030, 98th Cong., 2d Sess. 307, *reprinted in* 1984 U.S. Code Cong. & Admin.News 3182, 3487 (footnotes omitted).

The crime of threatening the life of the President requires that the defendant knowingly mail a letter containing a threat to take the life of the President. 18 U.S.C. § 871. The threat must be a "true threat" as opposed to mere political hyperbole or constitutionally protected speech. *Watts v. United States,* 394 U.S. 705, 707–08, 89 S.Ct. 1399, 1400–01, 22 L.Ed.2d 664 (1969); *United States v. Hoffman,* 806 F.2d 703,

706 (7th Cir.1986), *cert. denied,* 481 U.S. 1005, 107 S.Ct. 1627, 95 L.Ed.2d 201 (1987). This court has required that the government prove that the defendant made the threat with the intent that it be interpreted by the recipient as a genuine expression of an intent to take the life of the President. *Hoffman,* 806 F.2d at 707; *see also United States v. Callahan,* 702 F.2d 964, 965 (11th Cir.), *cert. denied,* 464 U.S. 840, 104 S.Ct. 133, 78 L.Ed.2d 128 (1983). No semantical contrivance can avoid the simple conclusion that the conduct involved in this offense is, in the words of 18 U.S.C. § 16, the "threatened use of physical force against the person … of another." [5] We conclude, therefore, that the district court properly classified Mr. McCaleb as a career offender.[6]

**2.**

■ Mr. McCaleb next argues that the district court erred in applying an upward departure for an official victim. Guideline § 3A1.2 applies a three level adjustment "[i]f the victim was any law-enforcement or corrections officer, any other official as defined in 18 U.S.C. § 1114, or a member of the immediate family thereof…." The guideline acknowledges the absence of certain high-level officials, notably the President and Vice–President, from this adjustment. Application Note 2 to § 3A1.2. However, the note specifically suggests that the court "should make an upward departure of at least three levels" when the victim of the crime is the President. *Id.; see also* 18 U.S.C. § 3553(b); Guideline

---

4. This section has been amended to place the language of the statute directly in the text of the guideline. The amendment became effective on November 1, 1989.

5. The Ninth Circuit recently considered an assertion that a bank robbery was not a crime of violence because, *inter alia,* the defendant "neither harmed nor threatened to harm anyone in any way during the robberies, [and] that none of his victims suffered any long-term effects from the robberies." *United States v. Selfa,* No. 89–10309, 1990 WL 79064, 1990 U.S.App. LEXIS 9490 at *4 (9th Cir. June 14, 1990). The court rejected this argument and held that the elements of the crime controlled the question of whether an act was a crime of violence, "not the

particular conduct of the defendant on the day the crimes were committed." *Id.* at *5.

6. Our conclusion is supported by a recent Eighth Circuit opinion in *United States v. Left Hand Bull,* 901 F.2d 647 (8th Cir.1990). In that case, the court was confronted with the question of whether mailing a threatening letter constituted a "crime of violence" for purposes of the career offender guideline, § 4B1.1. The defendant argued that he did not have the ability to carry out the threat because he was incarcerated when he mailed the letter. *Id.* at 649. The Eighth Circuit concluded that the act of mailing the threatening letter "falls squarely within the definition of a crime of violence contained in 18 U.S.C. § 16," and thus the defendant's inability to carry out the threat was irrelevant. *Id.*

§ 5K2.0 (allowing upward departures in appropriate circumstances).[7]

Mr. McCaleb asserts that the upward departure would be warranted in this case only if "the President actually [had] been harmed, or ... [knew] of the existence of the defendant's letter." Appellant's Br. at 10. Nothing in the statute or the guidelines requires that the victim be harmed or made aware of the threat. The upward adjustment reflects the seriousness of the offense when the victim is the President. As this court has noted, a threat against the President may be " 'enormously disruptive and involves substantial cost to the government.' " *Hoffman*, 806 F.2d at 707 (quoting *Rogers v. United States*, 422 U.S. 35, 47, 95 S.Ct. 2091, 2098, 45 L.Ed.2d 1 (1975) (Marshall, J. concurring)). The district court properly rejected Mr. McCaleb's argument.

### 3.

The district court calculated the final offense level to be 20, which, when combined with Mr. McCaleb's criminal history category of VI, gives a sentencing range of 70–87 months. Because the sentence range exceeded the maximum sentence found in the statute, the district court imposed the maximum statutory penalty.[8] We conclude that the district court correctly calculated Mr. McCaleb's sentence. Having determined that Mr. McCaleb was sentenced properly as a career offender, we need not address his other arguments with respect to the sentencing calculation. They deal with the district court's preliminary inquiry as to the proper offense level if Mr. McCaleb was not a career offender. Because this level was lower, even under Mr. McCaleb's calculation, than the applicable offense level as a career offender, the district court correctly focused on the appropriate sentencing calculation under the career offender section of the guidelines.[9]

### B. *Downward Departure for Military Service*

The district court did not dispute—nor do we—that a person's military record might, under some circumstances, warrant a downward departure. *See* 18 U.S.C. § 3553(b); *see also United States v. Pipich*, 688 F.Supp. 191, 192–93 (D.Md.1988) (military record warranted downward departure); *cf. United States v. Neil*, 903 F.2d 564, 566 (8th Cir.1990) (acknowledging that military service may warrant a downward departure "in an unusual case," but downward departure not justified because service was only as a recruiter). Here, however, the district court declined to make such a departure. That determination is unreviewable in this court. *United States v. Franz*, 886 F.2d 973 (7th Cir. 1989).

### Conclusion

For the preceding reasons, we affirm the district court's sentence.

AFFIRMED.

---

7. Application notes to the guidelines "are entitled to 'substantial weight.' " *United States v. McNeal*, 900 F.2d 119, 123 n. 5 (7th Cir.1990) (quoting *United States v. White*, 888 F.2d 490, 497 (7th Cir.1989)). The notes were written by the Sentencing Commission and are intended to be considered in conjunction with the text of the guidelines. *Id.; see also United States v. Pinto*, 875 F.2d 143, 144 (7th Cir.1989).

8. *See supra* note 3.

9. A court will refer to the career offender guideline only when the offense level given in that guideline exceeds the level that otherwise would apply. Guideline § 4B1.1.