**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Ronald J. PACIONE, Defendant–Appellant.**

**No. 90–2825.**

United States Court of Appeals, Seventh Circuit.

Argued June 13, 1991.

Decided Dec. 26, 1991.

Rehearing Denied Feb. 28, 1992.

**BACKGROUND**

Pacione managed a pizza business owned by his wife. In 1987, Mrs. Pacione fell behind on her quarterly payments for employee withholding taxes. In April, 1988, the Internal Revenue Service (IRS) assigned Revenue Officer Karla Bartels to collect the taxes. She dealt principally with Mr. Pacione. In July, 1989, Bartels arranged for a levy on Mrs. Pacione's wages, earned in other employment, and the levy took effect near the end of August. In the summer of 1989, Mrs. Pacione had surgery for lung cancer, and at the end of August was in the hospital for the second time.

On August 28, 1989, Pacione received his wife's paycheck and discovered that the amount had been greatly reduced by the levy.

Bartels testified that Mr. Pacione telephoned her and asked why the hell she had levied on his wife's wages. He said they need the money. "He then said that his wife was going to be undergoing surgery in the next couple hours, or in approximately two hours, and that if anything happened to her, I would not see the sun set. He said, 'I swear on my mother's grave you will not see the sun set.'" After asking for her boss' home address and phone number, he told her he knew where she lived and her home phone number. "He said that he would carry through on this threat and then he just kind of chuckled before he hung up and said it was a private verbal conversation between just the two of us and that nobody else would know." Bartels "immediately went to my boss, Martin James, and told him that I had been threatened."

An hour or so later, Mr. Pacione and a friend came to the IRS local office. A taxpayer who was waiting there testified that Mr. Pacione said to his friend "that he wasn't going to go to jail ... that he was going to blow the ... place up."

Mr. Pacione testified that he made the call to Bartels, asked "why in the hell did you put a levy on my wife's paycheck," and said that the news of the levy "could kill

James M. Kuhn, Asst. U.S. Atty. (argued), Office of the U.S. Atty., Peoria, Ill., for plaintiff-appellee.

Ruth Snyder (argued), Kavanagh, Scully, Sudow, White & Frederick, Peoria, Ill., for defendant-appellant.

Before CUMMINGS and RIPPLE, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

FAIRCHILD, Senior Circuit Judge.

Ronald Pacione was convicted of violating 18 U.S.C. § 115(a)(1)(B) by threatening to assault a federal revenue officer with the intent to impede, intimidate, or interfere with her performance of official duties. Pacione was sentenced to 18 months imprisonment, with one year of supervised release. Pacione appealed his conviction and his sentence.

her." He denied the statements about not seeing the sun set, and about blowing the place up.

Pacione was first charged by information with endeavoring, by threat of force, to intimidate or impede an employee of the United States acting in her official capacity, in violation of 26 U.S.C. § 7212(a). A jury trial ended in a mistrial because the jury could not reach a unanimous verdict.

The government then obtained a two-count indictment against Pacione. Both counts alleged violations of 18 U.S.C. § 115(a)(1)(B). The first count charged that Pacione "threatened to assault Karla Bartels ... with the intent to impede, intimidate, or interfere with Karla Bartels while she was engaged in the performance of official duties." The second count charged that Pacione "threatened to assault Karla Bartels ... with the intent to retaliate against Karla Bartels on account of her performance of official duties." A jury convicted Pacione on the first count and acquitted on the second count.

Pacione raises five issues on appeal: (1) the case should have been dismissed because of prosecutorial vindictiveness; (2) the government's rebuttal witnesses should not have been allowed to testify; (3) the government engaged in prosecutorial misconduct; (4) the jury instructions should have defined a threat; and (5) the court did not apply the sentencing guidelines properly.

## PROSECUTORIAL VINDICTIVENESS

■ Pacione argues that the district court erred in denying his motion to dismiss for prosecutorial vindictiveness without conducting an evidentiary hearing. Pacione's only claim of vindictiveness was that he was first charged with violating 26 U.S.C. § 7212(a), punishable by a fine of up to $3,000 and/or imprisonment not to exceed one year, but after mistrial, he was charged with violating 18 U.S.C. § 115(a)(1)(B), which is punishable by a fine up to $5,000 and/or imprisonment not to exceed three years. This Circuit has held, as Pacione concedes, that when a superseding indictment is obtained after a mistrial,

there is no presumption of vindictiveness, and one seeking dismissal must establish actual vindictiveness by objective evidence. *United States v. Nichols*, 937 F.2d 1257, 1261 (7th Cir.1991); *United States v. Whaley*, 830 F.2d 1469, 1479 (7th Cir.1987), *cert. denied*, 486 U.S. 1009, 108 S.Ct. 1738, 100 L.Ed.2d 202 (1988). Pacione argues that in this case, the only possible explanation for the enhanced charge is vindictiveness.

In *United States v. Napue*, 834 F.2d 1311, 1329 (7th Cir.1987), this court held that in order to obtain an evidentiary hearing on a claim of vindictive prosecution, a defendant must present sufficient evidence to raise a reasonable doubt as to the propriety of the prosecutor's actions. Pacione did not make this showing because, contrary to Pacione's claims, there are explanations other than vindictiveness for the enhanced charge. The government offered two explanations to the trial court, both of which are "normal factors ordinarily considered in determining what course to pursue." *United States v. DeMichael*, 692 F.2d 1059, 1062 (7th Cir.1982), *cert. denied*, 461 U.S. 907, 103 S.Ct. 1878, 76 L.Ed.2d 809 (1983).

First, the government was not able to introduce evidence of Bartel's reaction to Pacione's threat in the first trial because the district court relied on a case concerning a similar charge under 26 U.S.C. § 7212(a), *United States v. Sciolino*, 505 F.2d 586, 589 (2d Cir.1974), to find the evidence inadmissible. The government believed that this testimony could be helpful, and that *Sciolino* might not apply to 18 U.S.C. § 115(a)(1)(B). The offenses described by the two statutes differ slightly. The offense charged originally was to endeavor to intimidate the revenue officer by threat of force. Those charged by indictment were to threaten to assault with the intent to intimidate or interfere with revenue officer, and secondly, to threaten to assault with the intent to retaliate against the revenue officer. There was at least a hope, though it did not materialize, that the judge would permit evidence of the victim's state of mind in proving the new charges. *See, United States v. Schneider*,

910 F.2d 1569, 1571 (7th Cir.1990), holding admissible evidence of the recipient's reaction where mailing a threat was charged.

The government also believed that reliance on 18 U.S.C. § 115(a)(1)(B) was preferable because it allowed the government to include two different charges in the indictment. The information alleged only that Pacione endeavored to "intimidate or impede" Bartels. The first count of the indictment similarly alleged an intent to "impede, intimidate, or interfere," and the second count alleged an intent to "retaliate against" Bartels. It was reasonable to believe that a jury might more readily find an intent to retaliate for the levy on the paycheck, although that was not the choice the jury ultimately made.

Pacione did not raise a reasonable doubt about the propriety of the prosecutor's purpose, and he was not entitled to a hearing on his claim.

## REBUTTAL WITNESSES

Pacione makes three arguments concerning the government's rebuttal witnesses. The government presented evidence from three witnesses whose opinions of Pacione's veracity stemmed from their dealings with him in the insurance business in the 1970s. In 1979, Pacione was convicted of violating state law because of his insurance dealings.

Christopher Klockau testified that he was a lawyer and a vice-president of the insurance company for which Pacione had worked. He knew Pacione as an agent and because of some legal action involving Pacione and the insurance company. When asked his opinion of Pacione's truthfulness, Mr. Klockau said, "My opinion is that his reputation is that he is untruthful." Mr. Klockau did not allude to Pacione's illegal insurance dealings until Pacione's counsel asked, "[Y]our company lost thousands of dollars because of Ron Pacione going out of business; is that correct?"

Ronald Schroeder testified that he knew Pacione because he took over Pacione's insurance agency in 1977, and he said he talked to approximately four hundred of Pacione's former customers. Mr. Schroe-der said that Mr. Pacione had a reputation for being untruthful, "especially in reference [to] the insurance business." Like Mr. Klockau, Mr. Schroeder did not allude to Pacione's illegal conduct until Pacione's counsel asked, "[W]as there a problem with the way that the trust fund account was set up with Mr. Pacione?"

David Behm testified that he knew Pacione because he had bought insurance from him in the 1970s. He said his opinion was that Pacione was untruthful.

■ First, Pacione argues that although the government purported to be offering the evidence to establish Pacione's character for untruthfulness under Rule 608(a), the government's actual purpose was to admit the evidence of prior bad acts in violation of Rule 404(b). We will review the district court's decision to admit the testimony under the abuse of discretion standard. *United States v. Briscoe*, 896 F.2d 1476, 1490 (7th Cir.), *cert. denied*, ── U.S. ──, 111 S.Ct. 173, 112 L.Ed.2d 137 (1990).

■ All three witnesses gave the type of testimony clearly contemplated by Rule 608(a); they testified on direct about their opinions of Pacione's untruthfulness and about his reputation for untruthfulness. Rule 404(b) does not exclude such testimony, and it was Pacione's counsel, rather than the government, who inquired about his business difficulties.

■ A fourth rebuttal witness, Carey, testified that she had known Pacione for 25 years and that six years ago, she had been in business with him. She said her opinion is that he is not a truthful person. The government had supplied defendant a list entitled "Government's Witness List for the Case-in-Chief." The four rebuttal witnesses were not included. Pacione argues that for this reason their testimony should not have been admitted, or at least his request for a continuance should have been granted. This portion of his brief says simply, "The Defendant was materially prejudiced by the four rebuttal witnesses and did not receive a fair trial." Without

more explanation of the source of the government's duty to supply the names in advance, and of the resulting prejudice, we are unpersuaded.

Pacione's third argument concerning the rebuttal witnesses is that there was an insufficient foundation for the reputation testimony given by Mr. Klockau and Mr. Schroeder. Pacione did not object at trial to the testimony of Mr. Schroeder, so we must consider his testimony under the plain error standard. Mr. Schroeder testified that he had talked to approximately four hundred of Pacione's former customers, and that is a sufficient basis for reputation testimony. It is also not plain error to admit reputation testimony which is based on events and conversations that occurred some ten or more years ago. Although in some cases the reputation may be so outdated as to make it inadmissible, see *United States v. Nedza*, 880 F.2d 896, 904 (7th Cir.), *cert. denied*, 493 U.S. 938, 110 S.Ct. 334, 107 L.Ed.2d 323 (1989), in this case it is not clear that the reputation is too remote in time.

Pacione objected to the foundation for Mr. Klockau's testimony, so we must review it under the abuse of discretion standard. After establishing that Mr. Klockau knew Pacione, the prosecutor asked Mr. Klockau, "Do you have an opinion as to the defendant's truthfulness or untruthfulness?" Mr. Klockau answered, "My opinion is that his reputation is that he is untruthful." The government concluded its examination by asking Mr. Klockau, "And in that opinion would you believe Mr. Pacione under oath?" There was no motion to strike the reference to reputation, and in the circumstances, it seems likely that the jury understood that Mr. Klockau was referring to his own opinion about Pacione's truthfulness. A proper foundation had been laid for his statement of opinion, and the bobble about reputation could not have been prejudicial in any event.

### PROSECUTORIAL MISCONDUCT

Pacione argues that the government engaged in prosecutorial misconduct because it improperly portrayed Pacione as a bad person by focusing on his failure to pay withholding taxes and on his 1979 conviction for violating the state insurance laws. Pacione's failure to pay withholding taxes was necessary to explain his relationship with the IRS and Agent Bartels, and his prior conviction was admissible impeachment, but Pacione argues that the government did not properly limit the use of this evidence. Again, applying the abuse of discretion standard, we find no error.

Every time the withholding taxes were discussed, it was evident to the jury that it was to consider the unpaid taxes only as background information. When Pacione's counsel objected during the government's opening statement, the district judge instructed the jury, "This is background and circumstantial evidence or statements that are being made. The charges are related to the threatening phone calls, not what happened before." During the direct examination of a supervisor for the Collection Division of the IRS, the testimony concerning withholding taxes consisted mainly of a general discussion of what withholding taxes are and how they are collected. The only testimony about the Pacione tax problems was that Pacione had not paid withholding taxes for three quarters in 1987 (although correct returns had been filed), that the Paciones did not pay the taxes after the IRS intervened, and that levies were placed on a bank account, on accounts receivable, and on Mrs. Pacione's wages. The government did not dwell unnecessarily on this information and the testimony was not presented in a prejudicial manner. The government was more aggressive in its closing argument, and suggested that Pacione "was not able to follow the rules of our society," but when Pacione's counsel objected, the judge said, in the presence of the jury, "Yes, he is not on trial here for failing to collect the taxes or failing to pay them. And don't dwell on it. Don't overemphasize it."

The government used the evidence of Pacione's prior conviction only for a

proper purpose. Immediately after the testimony about Pacione's prior conviction, the judge instructed the jury, "I remind you that this is for the limited purpose of enabling you to judge credibility. It has nothing to do with the instant offense."

## OMISSION OF A REQUESTED INSTRUCTION

At a recorded instructions conference, counsel and the court took up an instruction previously requested by defendant. After the court indicated probable refusal, Pacione's counsel amended it. We quote the amended form, the differences seeming minor:

A threat is a statement made in a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of an intention to inflict bodily harm upon or to take the life of another.

During the discussion, counsel had cited the source of the language, *United States v. Khorrami*, 895 F.2d 1186, 1192 (7th Cir. 1990), and had asserted that *Khorrami* changed what must be proved in order to prove a threat.

The court then refused the instruction. Defense counsel did not "object" to the refusal then or when the court gave an opportunity after instructing the jury.

Under Rule 30, Fed.R.Crim.P., a party is not permitted to assign error unless the party has objected, "stating distinctly the matter to which that party objects and the grounds of the objection." *United States v. Garcia*, 897 F.2d 1413, 1422 (7th Cir.1990). This court has held that specific and distinct objections voiced in a recorded instructions conference will be considered timely under Fed.R.Crim.P. 30. *United States v. Hollinger*, 553 F.2d 535, 543 (7th Cir.1977). Although counsel did not use the word "object," we think her statements at the conference fulfilled the rule. The grounds of her claim in support of the instruction were sufficiently distinct

and her objection to the refusal was implied. No one could be misled.

*Khorrami*, and the earlier cases with the same holding, addressed the question whether there was sufficient evidence to support a verdict that a communication, couched in language concerning violence, was a true threat. *Watts v. United States*, 394 U.S. 705, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969) (language held to be political hyperbole protected by the First Amendment, and not a true threat); *United States v. Hoffman*, 806 F.2d 703, 707 (7th Cir.1986); *Roy v. United States*, 416 F.2d 874, 877 (9th Cir.1969) (construing the willfulness requirement of the statute under consideration). These cases focus on whether a reasonable person would foresee that the hearer would take the statement seriously. We do note that a recent case in this circuit where the alleged threat was deemed ambiguous, focuses on whether the recipient could reasonably have regarded the statement as a threat. *United States v. Schneider*, 910 F.2d 1569, 1570 (7th Cir. 1990) (citing *United States v. Prochaska*, 222 F.2d 1, 2 (7th Cir.1955)) and *United States v. Holzer*, 816 F.2d 304, 310 (7th Cir.), *vacated for reconsideration on other grounds*, 484 U.S. 807, 108 S.Ct. 53, 98 L.Ed.2d 18 (1987).

Although these cases applied the *Khorrami* test in determining whether there was evidence upon which a jury could find that a threat was made, it logically must follow that where the question reaches the jury, it must apply the same test in performing its function. We conclude that a defendant charged with making a threat is entitled to the instruction where the evidence permits a reasonable doubt whether the alleged threat meets the *Khorrami* test. Because of the difficulty of drawing the reasonable doubt line in many circumstances, it would be prudent to give the instruction, if requested. Under the circumstances before us, the omission was probably not error, but in any event it is unlikely that the omission affected the result, and any error was harmless.

The primary issue in this case was whether the allegedly threatening remarks

were made or not. Pacione testified he did not say them. Nothing in the circumstances suggested a context of levity, as referred to in *Roy*, 416 F.2d at 878, nor political hyperbole, as in *Watts, Khorrami,* or *Hoffman*. There was no suggestion of any reason why a person in Pacione's position would not have foreseen that Bartels would interpret his statement literally. In cross-examining Ms. Bartels, defense counsel did not seek to bring out any circumstance indicating that Mr. Pacione's words should not be taken seriously. Evidence of her actual reaction was excluded on Pacione's objection. The jury also found that Pacione intended to impede, intimidate, and interfere with Bartel's performance of duty and the jury would not have made that finding if it were not convinced that his remarks were intended to put her in fear of harm.

## SENTENCING

U.S.S.G. § 2A6.1 applies to Threatening Communications and provides a base offense level of 12, decreased to eight because defendant did not engage in conduct toward carrying out his threat, and his conduct involved a single instance, evidencing little or no deliberation. Three levels were added because of the official status of the victim, pursuant to § 3A1.2. Two more levels were added for obstruction of justice by testifying untruthfully at trial, § 3C1.1, making a total offense level of 13. The Criminal History Category turned out to be II, yielding a sentencing range of 15–21 months imprisonment. The court imposed 18 months.

 Pacione argues that the court made two errors in applying the sentencing guidelines. First, the court applied § 2A6.1 rather than § 2A2.3 to determine Pacione's base offense level. Pacione's only support for his argument that the court should have used § 2A2.3 is that the commentary to § 2A2.3 lists 18 U.S.C. § 115(a) as a statute to which it applies and the commentary to § 2A6.1 does not. However, § 2A2.3 is for minor assault, and § 2A6.1 is for threatening communications and clearly more applicable to Pacione's

offense. Also, although the commentary to § 2A6.1 does not list 18 U.S.C. § 115(a), Appendix A of the guidelines lists only § 2A6.1 as the proper guideline section for 18 U.S.C. § 115(b)(4) which is the penalty provision for threats prohibited by 18 U.S.C. § 115(a).

 Pacione's second argument is that his sentence should not have been adjusted three levels because of the official status of the victim. Pacione argues that this is not a proper basis for an adjustment because an element of the crime charged is that the victim is a revenue officer and was therefore included within the base offense level of eight. Bartels' official status was not, however, incorporated into the guidelines section which determined Pacione's base offense level; the § 3A1.2 adjustment was necessary in order to reflect all the elements of Pacione's offense. This court has upheld an adjustment under § 3A1.2 when the crime charged required that the victim be the President and the base offense level was calculated under § 2A6.1. *United States v. McCaleb*, 908 F.2d 176, 178 (7th Cir.1990). Thus, Pacione's sentence was calculated correctly.

## CONCLUSION

The judgment of the district court is AFFIRMED.

RIPPLE, Circuit Judge, dissenting.

I believe that the failure of the district court to give the tendered instruction defining a threat was error. Furthermore, on this record, that failure can hardly be termed harmless. Accordingly, I respectfully dissent.