29 F.3d 637
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Joshua William SANDERS, Defendant-Appellant.
 No. 93-10780.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 13, 1994.
Decided Aug. 1, 1994.
Memorandum Disposition Ordered Withdrawn August 30, 1994.
 
 MEMORANDUM*
 Before: GOODWIN, POOLE, and REINHARDT, Circuit Judges.
 
 
 1
 Joshua William Sanders appeals his conviction and sentence on two counts of mailing a threatening communication in violation of 18 U.S.C. Sec. 876. Sanders plead guilty to both counts and received two concurrent 15-month terms of imprisonment. We have jurisdiction under 28 U.S.C. Sec. 1291. We affirm in part and reverse in part, and remand for resentencing.
 
 I.
 
 2
 Sanders first contends that the district court should have granted him a four-point reduction in offense level under Sec. 2A6.1(b)(2). A defendant may receive a four-level downward adjustment under Sec. 2A6.1(b)(2) if his illegal action involved a "single instance evidencing little or no deliberation." We review the sentencing court's underlying factual determinations for clear error. United States v. Andrus, 925 F.2d 335, 337 (9th Cir.), cert. denied, 112 S.Ct. 249 (1991). We review its interpretation of the relevant Guidelines de novo. United States v. McAninch, 994 F.2d 1380, 1383 (9th Cir.), cert. denied, 114 S.Ct. 394 (1993).
 
 
 3
 Sanders mailed two letters, to two separate victims, the local NAACP branch and a Jewish congregation. Each letter was tailored to the racial or religious characteristics of its intended target, and contained different insults. One letter was postmarked "Fairfield, CA," and the other "Oakland, CA." Given these facts, the district court did not clearly err in finding that Sanders committed two separate unlawful acts, and was therefore not entitled to a reduction for committing a "single instance" of mailing a threatening communication.[1]
 
 II.
 
 4
 Sanders next contends that the court erred in failing to give him notice that it would not follow the presentence report's recommendation concerning a downward departure under Sec. 2A6.1(b)(2). Under Sec. 6A1.3(b), the district court must resolve disputed sentencing factors and notify the parties of its tentative findings before imposing a sentence.
 
 
 5
 The government admits that the district court did not issue any tentative findings on any sentencing issue prior to sentencing Sanders. However, the district court questioned the applicability of Sec. 2A6.1(b)(2) at the November 1993 hearing at which Sanders pled guilty. The parties briefed the issue and argued it at the December 1, 1993 hearing. Thus, even if the district court failed to follow the strict terms of Sec. 6A1.3(b), any error was harmless. Sanders had ample opportunity to litigate the application of Sec. 2A6.1(b)(2) before sentencing. Cf. United States v. Palmer, 946 F.2d 97 (9th Cir.1991).
 
 III.
 
 6
 Sanders next argues that the court erred by adding two points to his criminal history score for two prior California juvenile adjudications.[2] In the first of these adjudications, the California juvenile court declared Sanders a ward of the court and placed him on probation; in the second, the court continued his juvenile wardship.[3] Sanders does not dispute the fact of these adjudications, but contends that the government has not shown that they involved adjudications of guilt.
 
 
 7
 In calculating a defendant's criminal history under the Guidelines, the sentencing court may count only those prior sentences which were "imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of nolo contendere." U.S.S.G. Sec. 4A1.2(a)(1); United States v. Booten, 914 F.2d 1352, 1354 (9th Cir.1990). The government bears the burden of proving the fact of conviction. United States v. Newman, 912 F.2d 1119, 1122 (9th Cir.1990).
 
 
 8
 As Sanders argues, a California juvenile adjudication is not a "conviction." See In re Asean D., 17 Cal.Rptr.2d 572, 577 n. 11 (Ct.App.1993). However, a child may be declared a ward of the court as a "law violator" only after the government shows "beyond a reasonable doubt" that the child has violated a criminal law. Calif. Welfare & Inst. Code Sec. 701. Thus, Sanders' first juvenile adjudication, in which he was declared a ward of the court, constitutes a valid basis for adding a criminal history point.
 
 
 9
 However, a California juvenile court may modify a wardship commitment order without a subsequent adjudication of guilt. In Re Glen J., 159 Cal.Rptr. 148, 151 (Ct.App.1989). Thus, Sanders' second juvenile adjudication, in which the wardship was continued, did not necessarily include an adjudication of guilt.
 
 
 10
 We therefore vacate Sanders' sentence and remand for resentencing. See United States v. Vasquez, 874 F.2d 250, 252 (5th Cir.1989) (resentencing is still required even if the defendant's sentence falls within the corrected guideline range).[4] On remand, the district court should omit the second criminal history point unless the government proves that Sanders' wardship was "continued" upon an adjudication of guilt.
 
 IV.
 
 11
 Finally, Sanders contends that the district court violated Rule 11(c)(1) of the Federal Rules of Criminal Procedure by inadequately informing him of the consequences of pleading guilty to count two of the original indictment. However, Sanders never complained of the alleged inadequacy before the district court.
 
 
 12
 Issues not raised before the district court are ordinarily waived for purposes of appeal. United States v. Flores-Payon, 942 F.2d 556, 558-60 (9th Cir.1991). None of the limited exceptions to this rule apply here. See id. If plain error has occurred and an injustice would otherwise result, review of the issue may nonetheless be appropriate. Id. Sanders has not shown any plain error. United States v. Maree, 934 F.2d 196, 200 (9th Cir.1991).
 
 
 13
 The district court judgment is AFFIRMED IN PART and REVERSED IN PART, and the case is REMANDED for resentencing.
 
 REINHARDT, Circuit Judge, dissenting in part:
 
 14
 I disagree with the majority's affirmance of the district court's ruling that Sanders was not entitled to a four-level reduction in offense level at sentencing. In my opinion, the district court's determination that Sanders' illegal acts did not constitute a "single instance evidencing little or no deliberation" is based on a misinterpretation of Sec. 2A6.1(b)(2) of the Sentencing Guidelines.
 
 
 15
 I would point out preliminarily that our disagreement over the proper interpretation of the Sentencing Guidelines in this case--mirroring the disagreement between the Assistant United States Attorney and defense counsel at trial--exemplifies the complexity inherent in applying the Guidelines, and the predicament that this complexity pose for defendants. The government's presentence report originally suggested that if Sanders pled guilty to two felonies, rather than a felony and a misdemeanor, he would have a lower offense level and thus a lower sentence. In light of this report, and on the advice of counsel, Sanders withdrew his guilty plea to the misdemeanor and pled guilty to the second felony, believing that by doing so he could reduce his time of imprisonment from five months to probation only.[1] He ended up being sentenced to 15 months instead. This occurred only because at the original sentencing hearing, no one--not the judge, nor either counsel--could predict with any accuracy what would be the ultimate consequence of Sanders' change in plea. The Guidelines are too complicated for that. As the district court explained to Sanders, both with candor and with some degree of prescience, "I wouldn't expect you to understand [the Guidelines] because judges and lawyers argue about them all the time."
 
 
 16
 Although the Guidelines were enacted in reaction against the arbitrary and unpredictable results of the prior unregulated sentencing regime, the treatment of the defendant here shows that at least in some cases application of the Guidelines can produce equally, if not more, arbitrary and unpredictable results. Certainly, no one could suggest that the result of the proceedings here was fair or equitable.
 
 
 17
 The majority finds that the phrase "a single instance," as used in Sec. 2A6.1(b)(2), is not broad enough to cover a few hours' conduct late in a single evening. I disagree and, although the majority does not reach this issue, I also disagree with the district court's conclusion that the term "deliberation" can be used to describe the actions at issue in this case.
 
 
 18
 I believe that the district court's conclusion that Sec. 2A6.1(b)(2) is inapplicable was based upon its misinterpretation of the Guidelines, and should thus be reviewed de novo. United States v. McAninch, 994 F.2d 1380, 1383 (9th Cir.), cert. denied, 114 S.Ct. 393 (1993). The court apparently interpreted the word "instance," as used in Sec. 2A6.1(b)(2), as meaning "threat," whereas I would interpret it as more analogous to "episode."
 
 
 19
 The only published circuit court opinion applying this Guideline section is United States v. Pacione, 950 F.2d 1348 (7th Cir.1991), and it supports my interpretation. Pacione involved two separate threats, one via telephone and one overheard in person, separated by over an hour. 950 F.2d at 1351. Despite the two separate occurrences, the Pacione court treated the episode as a single incident or "instance" and granted a four-level reduction in offense level pursuant to Sec. 2A6.1(b)(2).
 
 
 20
 After returning home at night drunk, Sanders wrote the two letters at the same time, mailed them on the same trip, and was asleep by 3 or 4 am. All of the relevant conduct occurred within a few hours. Moreover, the letters were the product of a single impulse to vent his feelings of bigotry. From this point of view, Sanders' choice of a Fairfield synagogue and the Fairfield NAACP was closely related. Both letters contained swastikas and slurs, and were addressed using derogatory terms.[2]
 
 
 21
 As Pacione suggests, the term "single instance" is broad enough to cover this short burst of drunken conduct.[3]
 
 
 22
 The district court examined the conduct of mailing a threatening communication, and dissected that conduct into all of its constituent steps. Having done so, and having found several steps, the court found "significant deliberation." However, under this scrutiny, the mailing of any letter is the product of significant deliberation. Any letter requires writing something, selecting the addressee, finding the addressee's address, attaching a stamp, and putting it in a mailbox. Because 18 U.S.C. Sec. 876 prohibits the mailing of a threatening communication, the steps enumerated by the district court are merely the essential and ordinary ones for a violation of the statute. In short, the district court's argument proves too much.
 
 
 23
 The only circumstance, besides the practical and necessary steps involved in the sending of any letter, that the district court relied on in finding deliberation was that "[t]he content of the writings themselves demonstrate that some deliberation went into their preparation." I cannot agree. Sanders was drunk and angry, anything but deliberative. The letters are handwritten, extremely short, full of misspellings, and contain epithets typical of outbursts of bigotry. In my view, they were clearly the product of little or no deliberation.[4]
 
 
 24
 To stretch the law, as the district court did in this case makes absolutely no practical sense. We sentence a young person to prison for 15 months for getting drunk and sending off two hate letters. The defendant's state of mind at the time he committed the offense may best be demonstrated by the fact that he affixed his return address to both missives. Surely, there are more sensible ways for society to deal with his conduct--and surely there are better uses for our prisons, which are already more than filled to capacity. In part the error in this case lies in the district judge's construction of the Guidelines--in part it lies in the refusal of my colleagues to treat his error in the manner required by law. The most fundamental problem of all, however, lies with the Sentencing Guidelines. Only Congress can correct that fundamental problem, and regrettably there is little reason to believe it will.
 
 
 25
 I therefore dissent in part and concur in part in the majority's disposition.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Because of our resolution of this issue, we need not address whether Sanders acted with little or no deliberation
 
 
 [2]
 A juvenile sentence is counted for Guidelines' purposes if the defendant's present offense conduct occurred within five years of his release from the sentence. U.S.S.G. Sec. 4A1.2(d)(2). That requirement is satisfied here
 
 
 [3]
 According to the PSR, the first incident involved "petty theft, [and] possession of a knife," and the latter involved a "DUI, Violation of Probation." PSI I at p 28, p 29. The PSR states that it is "based upon juvenile probation records from Mendocino and Sonoma Counties."
 Although Sanders objected to the use of these charges in his criminal history calculation, the district court adopted the PSI's criminal history calculations without comment.
 
 
 [4]
 Sanders had a total of 5 criminal history points, placing him in Category III. Subtracting one point from Sanders' score will not change his criminal history category, as Category III encompasses criminal history scores of 4 to 6 points. U.S.S.G. Ch. 5, Pt. A. Thus, with or without the second juvenile adjudication, the applicable guidelines range is 10-16 months. We express no view on the appropriateness of Sanders' current 15-month sentence and remand only to allow the district court to exercise its sentencing discretion under the corrected criminal history score. See Vasquez, 874 F.2d at 252
 
 
 [1]
 As the Assistant United States Attorney emphasized at oral argument, Sanders' trial counsel knew that, given the parties' disagreement over the application of Sec. 2A6.1(b)(2), there was no guarantee that Sanders' change of plea would result in a lower sentence. Counsel's advice to Sanders to hazard the change of plea may have been mistaken (as it clearly is in retrospect). A review of some of Sanders' other trial papers shows that, aside from this issue, Sanders did not benefit from the most effective legal assistance. Nonetheless, in this situation, with these variable factors, even the best of lawyers could not have given Sanders more than an educated guess regarding his sentence under the Guidelines
 
 
 [2]
 I must take issue with the majority's statement that "[e]ach letter was tailored to the racial or religious characteristics of its intended target." Memorandum at 2 (emphasis added). In my view, the term "tailored" connotes a kind of careful crafting, an attention to detail and fit, that is conspicuously lacking in these letters. In them, Sanders used the obvious racist and antisemitic epithets employed by unthinking people, nothing more
 
 
 [3]
 In Pacione there were two threats against a single IRS agent within the space of a little more than an hour. If instead the defendant had gone to the IRS office and become enraged and threatened, at the same time, the two employees who were helping him, it would still seem to constitute a "single instance."
 
 
 [4]
 In contrast, the defendant's conduct in Pacione, in which the four-level reduction was granted, evidences significantly more deliberation. There, during working hours, the defendant called the IRS agent, threatened her, gathered together a friend to help him out, drove to the IRS office, and conveyed a new threat. Pacione, 950 F.2d at 1351. Thus, if in this circuit we still followed the practice of writing opinions regarding new issues of law, we would be creating a circuit split by our disposition here