151 F.3d 1034
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Harry R. WATKINS, Defendant-Appellant.
 No. 97-3501.
 United States Court of Appeals, Seventh Circuit.
 Submitted March 5, 1998.*
Decided June 22, 1998.
 
 Appeal from the United States District Court for the Northern District of Illinois, Eastern Division, No. 91 CR 63. Ann C. Williams, Judge.
 Before Hon. RICHARD D. CUDAHY, Hon. FRANK H. EASTERBROOK, and Hon. KENNETH F. RIPPLE, Circuit Judges.
 
 ORDER
 
 1
 Harry R. Watkins was convicted by a jury of three counts of threatening to assault Internal Revenue Service (IRS) employees in violation of 18 U.S.C. § 115(a)(1)(B). On appeal, we reversed and remanded the case due to the district court's premature determination that Mr. Watkins had voluntarily and knowingly waived his Sixth Amendment right to be present at trial. United States v. Watkins, 983 F.2d 1413 (7th Cir.1993). Upon retrial, a jury convicted Mr. Watkins of three counts of threatening IRS officials and the district court sentenced him to eleven months' and fifteen days' incarceration on each count to run concurrently. Mr. Watkins appeals and submits that the evidence will not support the jury's verdict. For the following reasons, we affirm the judgment of the district court.
 
 
 2
 * BACKGROUND
 
 
 3
 Mr. Watkins was dismissed from his position as a taxpayer service representative at the Chicago IRS office. He filed a complaint with the Equal Employment Office (EEO) of the IRS, which found that the discharge was not racially motivated. Mr. Watkins then telephoned the IRS Complaint Center requesting that his problems be addressed by a black EEO specialist, a black hearing examiner, and a black court reporter. Based on the content of his telephone calls to the IRS employees, he subsequently was charged with three counts of making threatening telephone calls to IRS employees.
 
 
 4
 Prior to the retrial of the case, the district court found that Mr. Watkins was not competent to stand trial. Almost a year later, the court ordered a reevaluation and found Mr. Watkins competent. Also prior to the retrial, the government filed a motion in limine to exclude the testimony of Dr. Daniel Foster regarding Mr. Watkins' mental condition. The district court denied the government's motion; it concluded that Dr. Foster's testimony was relevant and admissible on the issue of whether Mr. Watkins lacked the mens rea required to convict him under 18 U.S.C. § 115(a)(1)(B). After the retrial, the jury convicted Mr. Watkins on all three counts of threatening IRS officials in violation of 18 U.S.C. § 115(a)(1)(B).
 
 II
 DISCUSSION
 
 5
 On appeal, Mr. Watkins contends that the evidence presented at trial was insufficient to support the jury's guilty verdict. When challenging the sufficiency of the evidence, a defendant seeking to overturn a jury's verdict "must overcome a very high hurdle." United States v. Billops, 43 F.3d 281, 284 (7th Cir.1994), cert. denied, 514 U.S. 1030, 115 S.Ct. 1389, 131 L.Ed.2d 241 (1995). In reviewing the sufficiency of the evidence, we consider the evidence in a light most favorable to the government and shall reverse only if there is no evidence from which a rational trier of fact could find guilt beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
 
 
 6
 In evaluating Mr. Watkins' contentions, we examine the record in light of the elements of the offense. Billops, 43 F.3d at 284. Title 18, section 115(a)(1)(B) states:
 
 
 7
 Whoever threatens to assault, kidnap, or murder, a United States official, a United States judge, a Federal law enforcement officer, or an official whose killing would be a crime under such section, with intent to impede, intimidate, or interfere with such official, judge, or law enforcement officer while engaged in the performance of official duties, or with intent to retaliate against such official, judge, or law enforcement officer on account of the performance of official duties, shall be punished as provided in subsection (b).
 
 
 8
 In order to convict Mr. Watkins, the government must prove the following elements: (1) the defendant; (2) threatened to assault; (3) a federal official; (4) with the intent to impede, intimidate, interfere with, or retaliate against the officer; (5) while the officer was engaged in or on account of the performance of his official duties. See United States v. Orozco-Santillan, 903 F.2d 1262, 1265 (9th Cir.1990).
 
 
 9
 At the outset, we conclude that there was sufficient evidence in the record from which the jury could find guilt beyond a reasonable doubt as to elements one, three, and five. Indeed, these elements are not in dispute. We shall focus therefore on whether the government provided sufficient evidence to establish that Mr. Watkins had threatened to assault the IRS employees (element two) and whether Mr. Watkins had the requisite intent (element four).
 
 A. Element Two--Threaten to Assault
 
 10
 In order to determine whether a statement is a "threat" under 18 U.S.C. § 115(a)(1)(B), we apply an objective standard. United States v. Pacione, 950 F.2d 1348, 1355 (7th Cir.1991), cert. denied, 505 U.S. 1229, 112 S.Ct. 3054, 120 L.Ed.2d 920 (1992); Orozco-Santillan, 903 F.2d at 1265. Our inquiry is "whether a reasonable person would foresee that the hearer would take the statement seriously." Pacione, 950 F.2d at 1355. The government need not prove that the defendant actually intended to carry out the threat. Cf. United States v. Khorrami, 895 F.2d 1186, 1192 (7th Cir.) (determining whether defendant mailed "true threat" in violation of 18 U.S.C. § 876), cert. denied, 498 U.S. 986, 111 S.Ct. 522, 112 L.Ed.2d 533 (1990).
 
 
 11
 Count I of the indictment involved a threat of assault to IRS employee, Mae Francis Williams. Williams, an EEO specialist at the IRS Complaint Center, testified that she received a telephone call from Mr. Watkins asking to speak with the Regional Director, Dorian Morley. Williams was acting in place of Morley who was out of town. She directed Mr. Watkins' inquiries to Robert Chiarello, the EEO specialist who was assigned Mr. Watkins' complaint. Williams testified that Mr. Watkins stated that if he did not get satisfaction, there would be a bloodbath at the IRS. Williams documented the telephone call and then contacted the IRS Inspection Service. Consequently, the Inspection Service posted an inspector at the Center for the remainder of the day and monitored incoming telephone calls. The next day, Mr. Watkins called the Complaint Center; Williams transferred the call to Chiarello, but overheard part of the conversation between Chiarello and Mr. Watkins and noted that Mr. Watkins seemed upset. She testified that the call upset her; never before had she received a call like this one during her tenure at the IRS.
 
 
 12
 Count II of the indictment charged Mr. Watkins with threatening IRS employee Robert Chiarello. At trial, Chiarello testified that Mr. Watkins left a telephone message requesting information about a disposition letter. Chiarello then returned Mr. Watkins' call and explained how his claim had been evaluated by the office. Chiarello testified that Mr. Watkins became very hostile and began swearing and using threatening language. After the telephone call, Chiarello documented the conversation in a standard "contact memorandum." At trial, Chiarello read from the contact memorandum which documented Mr. Watkins' statements that he would send his response to the disposition letter along with "something else" and that he would "take care of" the IRS employees involved in his discrimination case. The contact memorandum also documented Mr. Watkins' statements that the IRS was going to "pay the consequences."
 
 
 13
 Count III of the indictment involved Mr. Watkins' threats of assault against other IRS employees, including Dorian Morley. Morley had been away from the office during Mr. Watkins' calls to Williams and Chiarello. She testified that, upon returning to the office, the employees were unsettled about Mr. Watkins' calls. Mr. Watkins then called Morley. A tape of that call was played to the jury. In the conversation, Morley informed Mr. Watkins that it was a violation of federal law to make threats of any nature to which Mr. Watkins replied "and by the way, owning a 9 meter miller [sic] automatic that shoots 18 bullets is not against the law." Tape Tr. at 7. After Morley stated that she interpreted Mr. Watkins' previous telephone conversations with IRS employees as threatening, Mr. Watkins replied: "You can either do it your way or we can do it my way." Tape Tr. at 11.
 
 
 14
 Viewing the evidence in a light most favorable to the prosecution, we conclude there was sufficient evidence to permit a rational jury to find that Mr. Watkins' statements were threats to assault IRS employees. Based on the evidence in this record, a reasonable person could conclude that the IRS employees would take the telephone threats seriously. See Pacione, 950 F.3d at 1355.
 
 B. Element Four--Specific Intent
 
 15
 Mr. Watkins argues that he did not have the ability to form the specific intent required under 18 U.S.C. § 115(a)(1)(B). The statute's explicit intent requirement states the threat must be made "with intent to impede, intimidate, or interfere with such official ... or with intent to retaliate against such official." 18 U.S.C. § 115(a)(1)(B).
 
 
 16
 At trial, Mr. Watkins presented the expert psychological testimony of Dr. Foster who had evaluated Mr. Watkins when he was an inpatient at a federal medical facility in 1991. Dr. Foster concluded that Mr. Watkins met the criteria for more than one personality disorder, but had trouble discerning the exact type of disorder. Dr. Foster explained that when Mr. Watkins experienced stress he became distrustful, hostile, and menacing. Dr. Foster also testified that during periods of stress, Mr. Watkins became isolated and avoided situations with which he was emotionally unable to cope. Dr. Foster also testified that Mr. Watkins suffered from more than just a personality disorder; he displayed "residual signs of a disease process, a brain disease process called schizophrenia." Trial Tr. at 79. Dr. Foster clarified that Mr. Watkins' patterns of reflexive responses to everyday life, such as his general distrust, indicated that Mr. Watkins had reflexive paranoia. After reviewing the tape recordings of Mr. Watkins' telephone calls to IRS employees, Dr. Foster also concluded that Mr. Watkins' bellicosity and anger demonstrated his frustration with his concept of justice. Dr. Foster concluded that Mr. Watkins' behavior on the tapes was "very rude, very inappropriate, very menacing and threatening in its manner, in its tone and volume." Trial Tr. at 82. Dr. Foster stated that, when Mr. Watkins does not feel threatened, he can speak and behave in an appropriate manner.
 
 
 17
 On cross-examination, Dr. Foster testified that Mr. Watkins' behavior at issue was not the product of a psychotic episode. Dr. Foster also explained that Mr. Watkins had elements of malingering, that is, exaggerating, faking, or feigning a mental impairment. The government brought to Dr. Foster's attention his March 21, 1991 report in which Dr. Foster concluded that Mr. Watkins presented himself as mentally impaired to lessen the consequences of his criminal offenses. Dr. Foster admitted that the report reflected his assessment at that time. Dr. Foster also admitted that during Mr. Watkins' 1991 stay at the psychiatric facility, he did not always behave as if he had severe paranoid disorder. Dr. Foster testified that Mr. Watkins was capable of goal-oriented behavior, including calling the IRS to resolve his perceived wrongs and influence IRS procedures.
 
 
 18
 Mr. Watkins asserts that Dr. Foster's assessment substantiates his contention that his personality disorder rendered him incapable of forming the requisite intent to intimidate and retaliate against IRS officials. Mr. Watkins argues that the government did not counter Dr. Foster's testimony concerning his personality disorders; therefore, the government did not establish the specific intent requirement beyond a reasonable doubt. We cannot accept this argument. The government countered Dr. Foster's assessments through cross-examination and through the presentation of its own case. In evaluating the evidence before the jury in the light most favorable to the government, we must remember that Dr. Foster's testimony need not have been accepted, in whole or in part, by the jury. Indeed, his testimony left a great deal of room for conclusions other than the one suggested by the defense. Dr. Foster testified that Mr. Watkins had a personality disorder, reflexive paranoia, and residual signs of schizophrenia; he also admitted that Mr. Watkins' behavior at issue was not a product of a psychotic episode and that Mr. Watkins did not always behave as if he had a paranoid disorder. Trial evidence also indicates that Dr. Foster concluded that Mr. Watkins presented himself as mentally impaired to lessen the consequences of his criminal offenses and that Mr. Watkins displayed elements of malingering. Dr. Foster stated that Mr. Watkins was capable of goal-oriented activity, such as calling the IRS to resolve his perceived wrongs and influence IRS procedures.
 
 
 19
 The jury was also entitled to evaluate Dr. Foster's testimony in light of its evaluation of the testimony presented earlier by the government. A review of that evidence makes it clear that the government presented evidence to support the conclusion that Mr. Watkins had the requisite intent under 18 U.S.C. § 115(a)(1)(B); he intended to intimidate and retaliate against IRS employees. As to Count I, Williams testified that Mr. Watkins threatened that if he did not get satisfaction, there would be a bloodbath at the IRS. As to Count II, Mr. Watkins stated to Chiarello that he would "take care of" the IRS employees that created his problems and that the IRS would "pay the consequences." As to Count III, Morley also testified that Mr. Watkins threatened that the IRS could do it their way or he would do it his way, a statement made after Mr. Watkins made a veiled threat regarding a semi-automatic gun. The record contains the vile and hostile language he used during his telephone calls. It also contains a description of the fear and disruption which the office endured as a result of these calls. A jury certainly could rationally infer that Mr. Watkins intended to intimidate and retaliate against the IRS employees who denied his discrimination complaint.
 
 
 20
 Finally, we have examined the authorities cited by Mr. Watkins and must conclude that they offer no support for his case. United States v. Himmelwright, 42 F.3d 777 (3d Cir.1994) simply does not support the proposition that the government must supply more evidence than it did to prove that Mr. Watkins had the intent to impede, intimidate, interfere, or retaliate against federal officials.[1] Mr. Watkins also relies upon United States v. Rahman, 34 F.3d 1331 (7th Cir.1994), and compares Rahman's inability to communicate effectively in English to his alleged inability to understand the effect of his words and tones due to his paranoid personality disorder. In Rahman, the defendant challenged the sufficiency of the evidence for solicitation of a violent felony and this court concluded that the strict, literal interpretation of a few words of the defendant's rudimentary English was not sufficient evidence to convict the defendant. Id. at 1339. We determined that there was insufficient evidence to support the defendant's conviction beyond a reasonable doubt. By contrast, here, the government presented more than a few words indicating Mr. Watkins' intent. The record contains the tapes and testimony of Mr. Watkins' threatening telephone calls, including his threats of intimidation and retaliation. In addition, the government's cross-examination of Dr. Foster reveals that Mr. Watkins was capable of goal-oriented activity, that Mr. Watkins had presented himself as mentally impaired to lessen the consequences of his crime, and that Mr. Watkins' calls were not the result of a psychotic episode. As such, we conclude that Rahman lends no support to Mr. Watkins' claim.
 
 Conclusion
 
 21
 Mr. Watkins has not overcome the high hurdle of challenging the sufficiency of the evidence underlying his jury convictions. Viewing the evidence in a light most favorable to the government, we conclude that the trial record contains ample evidence to sustain the jury's guilty verdicts. Accordingly, we affirm the judgment of the district court.
 
 AFFIRMED
 
 
 *
 This successive appeal has been assigned to the original panel under Internal Operating Procedure 6(b). The panel heard oral argument on the initial appeal and is unanimously of the view that a second argument is unnecessary
 
 
 [1]
 In Himmelwright, the relevant charges against the defendant included two counts of transmitting a communication containing a threat to injure a person "with intent to extort from any person, firm, association, or corporation, any money or other thing of value" in violation of 18 U.S.C. § 875(b). The defendant worked as a truck driver for the Postal Service and had made telephone calls to the Post Office suggesting that if he did not get transferred, he would shoot people at the Post Office. 42 F.3d at 780-82. The government introduced evidence that the defendant purchased a handgun prior to making the telephone calls and that the defendant possessed the handgun when he made the calls; the district court admitted the evidence under Federal Rule of Evidence 404(b) as rebuttal to the defendant's claim that he lacked the requisite mens rea. 42 F.3d at 779, 782-84. After a jury conviction, the defendant appealed and the Third Circuit concluded that the handgun evidence was marginally relevant to the defendant's intent to extort but that it should have been excluded under Rule 403. 42 F.3d at 786-87