UNITED STATES of America,
Plaintiff–Appellee,

v.

Donald Bruce McANINCH,
Defendant–Appellant.

No. 91–30433.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 18, 1992.

Decided May 20, 1993.

**1382**

Kevin A. Peck, Seattle, WA, for defendant-appellant.

Angelo J. Calfo, Asst. U.S. Atty., Seattle, WA, for plaintiff-appellee.

Before: WRIGHT, FLETCHER, and CANBY, Circuit Judges.

FLETCHER, Circuit Judge:

Donald McAninch, who pleaded guilty to mail fraud and mailing threatening communications, appeals the sentence imposed by the district court. We affirm.

## FACTS AND PROCEDURAL HISTORY

From April of 1990 through March of 1991, McAninch waged a campaign of harassment and intimidation against several individuals in Oregon and Washington whom he did not know but believed to be interracially married. Following an investigation by the Secret Service, McAninch was arrested and indicted for these activities.

The indictment alleged that McAninch ordered scores of magazine subscriptions to be sent to the homes of the eight individuals he targeted, as well as books and other merchandise, for which they were billed; that he submitted false change of address cards to the post office in the individuals' names, causing their mail to be forwarded to other locations; that he called utilities and requested to have power shut off in their homes; and that he sent threatening communica-tions, including a magazine article describing the violent death of Mulugeta Seraw, a black Ethiopian youth who was killed by skinheads in Portland, an oath pledging allegiance to the Ku Klux Klan, and a photograph of a confederate statue with a swastika drawn on it. In addition, it was alleged that McAninch mailed two letters to the White House threatening to kill President Bush, signing the names of two of the men he had chosen to harass.

Pursuant to a plea agreement, McAninch pleaded guilty to three counts of the ten-count indictment: count three, which alleged mail fraud in connection with a false change of address form McAninch filled out in the name of Walter Naylor, in violation of 18 U.S.C. §§ 1341, 1346, 3237, and 2; count nine, which alleged the mailing of a threatening communication to Brian Williams, in violation of 18 U.S.C. § 876, 3237, and 2; and count ten, which alleged that McAninch sent a letter threatening the President to which he had signed the name of Ramsey Al–Salam, in violation of 18 U.S.C. §§ 871, 3237, and 2. In keeping with the plea agreement, the remaining counts were dismissed at sentencing.

The probation officer premised the presentence report on his determination that the mail fraud count was controlled by guidelines section 2F1.1 (Fraud and Deceit) and that the two other counts fell under section 2A6.1 (Threatening Communications). Applying these guidelines, the probation officer calculated McAninch's offense level to be 13,[1] with a criminal history category of II. At the sentencing hearing, the district court departed upward to an offense level of 16 on the basis of three factors: the President had been a victim of the threatening communication in count ten; the harassment had resulted in extreme psychological injury to McAninch's victims; and McAninch's actions had

---

1. The offense level was arrived at as follows: McAninch was awarded 8 points for the mail fraud count (the base offense level of 6 plus 2 points for more than minimal planning), and 12 points for each of the threatening communications counts (the unadjusted base offense level).

As these counts were nongroupable, the officer added 3 levels (one for each of the three counts) to the highest offense level, 12, to arrive at 15. *See* U.S.S.G. § 3D1.4 (1991) (Determining the Combined Offense Level). From 15, the officer

been racially motivated.[2] The court sentenced McAninch at the top of the applicable range to 30 months imprisonment. In addition, the court ordered McAninch to pay restitution in the amount of $250.91 to the victim of count eight and imposed a special assessment of $150.

On appeal, McAninch contends that the district court improperly relied on conduct alleged in the dismissed counts in sentencing him and that the three-point upward departure was unwarranted.

## DISCUSSION

### A. Improper Reliance on Dismissed Counts

In addition to describing the offenses to which McAninch had pleaded guilty, the presentence report contained information about the victims of the counts that were to be dismissed pursuant to the plea agreement. At the sentencing hearing, the court characterized McAninch's conduct as "over a year's worth of repeated bombardment," although the specific counts to which McAninch had pleaded referred only to acts committed between September 1990 and January 1991. (Sentencing Transcript ("S.T.") at 41.) The judge permitted a victim of one of the dismissed counts, Luma Nichol, to address the court concerning the racist nature of McAninch's actions. As part of McAninch's sentence, Nichol was awarded $250.91 in restitution, representing the amount she had spent to cancel magazine subscriptions and undo other effects of the harassment against her.

 McAninch contends that the district court's consideration of conduct that was the subject of dismissed counts entitles him to a remand. We review the district court's interpretation of the Sentencing Guidelines de novo, *United States v. McInnis*, 976 F.2d 1226, 1233 (9th Cir.1992), and the court's factual findings in connection with sentencing for clear error, *United States v. Chapnick*, 963 F.2d 224, 226 (9th Cir.1992).

This circuit recently addressed the issue whether dismissed counts can be taken into consideration by the sentencing judge. *United States v. Fine*, 975 F.2d 596 (9th Cir.1992) (en banc). In *Fine*, the defendant pleaded guilty to two counts of a multicount mail fraud scheme and challenged his sentence because it was based on losses that were part of the same scheme but alleged in dismissed counts. We held that the court could consider dismissed counts in establishing the loss caused by Fine's fraud because under the guidelines they were groupable with the count of conviction and therefore constituted relevant conduct pursuant to section 1B1.3(a)(2). *Id.* at 599–600; *see also United States v. Von Mitchell*, 984 F.2d 338, 339–40 (9th Cir.1993) (per curiam) (applying *Fine*). In *Fine*, however, we distinguished and reaffirmed our previous holding in *United States v. Castro–Cervantes*, 927 F.2d 1079 (9th Cir.1990), that a court may not *depart upward* from the guidelines sentence on the basis of dismissed charges. *Fine*, 975 F.2d at 602; *Von Mitchell*, 984 F.2d at 339.

Offenses to which guideline 2F1.1 applies, which include the mail fraud charged in count three, are groupable offenses. *See* U.S.S.G. § 3D1.2(d) (1991); *Fine*, 975 F.2d at 599. The two threatening communications counts to which McAninch pleaded, and to which section 2A6.1 applied, however, are specifically excluded from the grouping provisions of the guidelines. *See* U.S.S.G. § 3D1.2(d) (1991). Under *Fine*, then, the district court was entitled to look at the entire fraud scheme, including the dismissed mail fraud counts, to establish the offense level for count three, but had to treat the threatening communications counts as independent offenses.

The injuries inflicted by McAninch were more psychic than financial. Under the logic of the Sentencing Guidelines, this meant that McAninch received the lowest possible base offense level rating for the mail fraud to which he pleaded guilty in count three, level 6. *See* U.S.S.G. § 2F1.1(b)(1)(A) (1991) (offenses resulting in losses of $2,000 or less).

---

deducted 2 points for acceptance of responsibility, resulting in the offense level of 13.

**2.** In doing so the court followed the recommendation of the probation department, which in turn was based on the government's sentencing memorandum.

The court adopted the recommendation of the presentence report to increase the offense level by two pursuant to section 2F1.1(b)(2)(A) because the fraud involved more than minimal planning, resulting in an offense level of eight for count three.[3]

There is nothing in the presentence report upon which the district judge relied that indicates that the calculation of the offense level for count three related to any of the dismissed charges. In recommending level eight (and considering but rejecting a vulnerable victim adjustment), the probation officer, in his report, mentioned only the victim of that count, the wife of the deceased man whose mail McAninch had fraudulently forwarded. Similarly, there is nothing in the record that shows that the court was relying on dismissed counts in adopting the level 12 as the base offense level for counts nine and ten. Twelve is the minimum under section 2A6.1.

McAninch's primary concern appears to be that the court considered the experiences of Nichol before imposing the sentence.[4] Count eight, the only count specifically concerning Nichol, charged McAninch with mail fraud in connection with a magazine he ordered in Nichol's name. Even if the court had looked to conduct directed against Nichol and other aspects of McAninch's overall fraudulent scheme in setting the offense level for count three, it would have been entitled to do so, because the fraud counts were groupable.[5]

### B. Upward Departure

■■■ McAninch makes specific objections to each of the court's three bases for departing upward. We review the district court's decision to depart under the tripartite test established in *United States v. Lira–Barraza*, 941 F.2d 745, 746–47 (9th Cir.1991) (en banc). First, we consider whether the district court had legal authority to depart, that is, whether there existed " 'an aggravating . . . circumstance of a kind, or to a degree, not adequately taken into consideration' " by the guidelines. *Id.* at 746 (quoting 18 U.S.C. § 3553(b)). This first consideration is an issue of law we review de novo. *Id.* Next, we review for clear error the district court's factual findings in support of the departure. *Id.* We must then determine whether the degree of departure was "unreasonable" in light of the standards and policies incorporated in the Sentencing Reform Act and the Sentencing Guidelines. *Id.* at 747, 751. Because the court departed upward a total of three levels on the basis of all three grounds for departure without allocation among them, we consider the validity of each ground before reaching the reasonableness of the departure. Finally, as part of our analysis, we must also consider whether the court improperly relied on dismissed charges in arriving at any of its findings of fact in support of the departure. *Fine*, 975 F.2d at 602; *Von Mitchell*, 984 F.2d at 339.

### 1. President as victim

■■ The letter McAninch sent to President Bush over the signature of Ramsey Al–Salam threatened that if the President did not "[e]nd the imperialist aggression against the Iraqi people," he would "pay with [his] life." It continued, "How would your wife, Barbara, like to walk into [the] Oval Office and see your brains splattered all over the wall? or visit Seattle with you and return to the White House *ALONE?* " (E.R. 6 at 11.)

Because the communication threatened the President, the government and probation officer both recommended that the court depart upward pursuant to application note 2 to

3. McAninch does not dispute this adjustment.

4. McAninch does not challenge the propriety of the court's restitution order to Nichol. The plea agreement provided that the court could "order restitution to any victim of the offense." (Excerpts of Record ("E.R.") 5 at 2.) At the sentencing hearing, McAninch agreed to pay restitution to Nichol. Under 18 U.S.C. § 3663(a)(3), which went into effect before McAninch's scheme of harassment came to an end, a court can order restitution in any criminal case to the

extent agreed to by the parties to a plea agreement. *See* Pub.L. No. 101–647; § 2509, 104 Stat. 4789, 4863 (1990); *see also United States v. Angelica*, 859 F.2d 1390, 1393 (9th Cir.1988) (court can order restitution under version of VWPA that went into effect during ongoing fraud).

5. McAninch does not contest the factual allegations of the dismissed fraud counts.

guideline section 3A1.2. The court adopted this recommendation as one of the grounds for its three-level upward departure. McAninch concedes the factual basis of the departure, that the President was a victim, but argues that to depart upward on this basis constituted impermissible double-counting in that an element of the offense of which he was convicted in count ten was that the President was a victim. McAninch further contends that his mailing of the letter was not motivated by the President's status.

Section 3A1.2(a) (Official Victim) of the 1991 Sentencing Guidelines [6] instructs the court to increase the offense level by three

> [i]f ... the victim was a law enforcement or corrections officer; a former law enforcement or corrections officer; an officer or employee included in 18 U.S.C. § 1114; a former officer or employee included in 18 U.S.C. § 1114; or a member of the immediate family of any of the above, and the offense of conviction was motivated by such status.

Because 18 U.S.C. § 1114 does not include the President among the list of officials it is designed to protect, however, section 3A1.2 does not provide for an upward adjustment when the official victim is the President. Application note 2 to that section fills in that lacuna: "Certain high-level officials, *e.g.*, the President and Vice President, are not expressly covered by this section. The court should make an upward departure of at least three levels in those unusual cases in which such persons are victims."

■ An application note cannot be disregarded by the district court unless it is inconsistent with the related guideline. *United States v. Anderson*, 942 F.2d 606, 612 (9th Cir.1991) (en banc); *see also United States v. Fine*, 975 F.2d 596, 599 n. 4 (9th Cir.1992) (en banc) (application notes entitled to "considerable weight"). Application note 2 is complementary to guideline 3A1.2. The note requires an increase of at least three levels whenever the President is the victim of an offense. In using the word "should," it differs from more typical "guided departures" encountered in the guidelines, which ordinarily employ nonobligatory language.[7] Nonetheless, the Sentencing Commission has denominated the apparently mandatory increase contemplated by application note 2 a "departure," so we treat it as such.

We find no merit in McAninch's contention that the upward departure constituted double-counting under the guidelines. Because all sorts of threatening communications fall within the ambit of section 2A6.1, the guideline which provided the base offense level for count ten, the relevant comparison in determining whether there was double-counting in this case is between the applicable guidelines provisions, not between the guidelines provisions and the criminal code. Indeed, the commentary to section 2A6.1 notes that

> [t]he Commission recognizes that this offense includes a particularly wide range of

**6.** Generally, we apply the version of the Sentencing Guidelines that was in effect at the time of sentencing, in this case, the 1991 guidelines. *United States v. Monroe*, 943 F.2d 1007, 1018 n. 13 (9th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1585, 118 L.Ed.2d 304 (1992). We note that guideline 3A1.2 has been amended in the 1992 guidelines so that the President is included in the definition of official victim. *See* U.S.S.G. § 3A1.2(a) (1992) (official victim is current or former "government officer or employee ... or a member of the immediate family"). Application note 2 to section 3A1.2, which has also been amended, now reads: "Certain high-level officials, *e.g.*, the President and Vice President, although covered by this section, do not represent the heartland of the conduct covered. An upward departure to reflect the potential disruption of the governmental function in such cases typically would be warranted." U.S.S.G. § 3A1.2 application note 2 (1992). Thus, under the

guidelines currently in effect, if the President is a victim, the sentencing court must add three points to the offense level, and may depart upward beyond that. The new guideline and commentary thus appear to subject a defendant to a greater potential increase for targeting the President.

**7.** As described in the introduction to the Sentencing Guidelines, guided departures contain "suggestions" which represent "policy guidance" for the courts. U.S.S.G. ch. 1, pt. A, at 6 (1991) (citing section 2G1.1 as example of guided departure); *see also* U.S.S.G. § 1B1.7 (1991) (Significance of Commentary) (commentary may suggest circumstances which, in Commission's view, warrant departure).

Application note 2 was recently amended so that it now represents a more typical guided departure. *See supra* note 5.

conduct and that it is not possible to include all of the potentially relevant circumstances in the offense level. Factors not incorporated in the guideline may be considered by the court in determining whether a departure from the guidelines is warranted.

U.S.S.G. § 2A6.1 application note 1 (1991). This commentary is borne out in McAninch's case, since section 2A6.1 applied to count nine as well, which did not involve the President.

Because section 2A6.1 does not specify any victim-related adjustments at all, a court's departure pursuant to application note 2 is not redundant. To the contrary, as is demonstrated by the involvement of the Secret Service in this case, a sentencing enhancement based on the fact that the President was the recipient of a threat is easily supportable because of the response the threat necessarily provokes in those whose responsibility it is to protect the chief of state. *See Roy v. United States*, 416 F.2d 874, 877 (9th Cir.1969) (observing that threats against President's life cannot be ignored); *United States v. McCaleb*, 908 F.2d 176, 179 (7th Cir.1990) (noting "enormously disruptive" and costly impact of such threats). We note that our conclusion is consistent with that of the other circuit to address this issue. *See United States v. Pacione*, 950 F.2d 1348, 1356 (7th Cir.1991) (victim's official status is not incorporated in guidelines section 2A6.1), *cert. denied,* —— U.S. ——, 112 S.Ct. 3054, 120 L.Ed.2d 920 (1992); *McCaleb,* 908 F.2d at 178–79 (upholding upward departure under application note 2 to section 3A1.2 for offense falling under section 2A6.1).

■ Relying on the language in guideline section 3A1.2, McAninch argues in the alternative that the three-level upward departure pursuant to application note 2 was improper because the letter was not "motivated by" the President's official status. *See United States v. Hoyungowa,* 930 F.2d 744, 748 (9th Cir.1991) (upward adjustment under section 3A1.2 requires finding that defendant was motivated by victim's official status). We

find this argument unpersuasive, for two reasons.

To begin with, application note 2 does not contain the "motivated by" language to which McAninch refers; nor do we perceive a reason to read the language into this departure provision since it functions independently of the section to which it is appended. Even if we were to read such a requirement into the application note, however, it was undoubtedly met in this case because such motivation was inherent in the offense to which McAninch pleaded guilty. Application note 4 to section 3A1.2 offers guidance on interpreting the language "motivated by such status." It explains that an offense arising out of a "personal dispute" between coworkers at a government agency would not be considered to have been motivated by the victim's official status. In this case, President Bush's official status was not incidental to the conduct at issue. In urging Bush to end a military conflict, McAninch in his threatening letter obviously referred to the President's official duties. Moreover, in keeping with the scheme of harassment devised by McAninch, the purpose of the communication evidently was to implicate its purported author in unlawful activities that would attract the attention of the authorities.

The court's decision to depart upward because the President was a victim was legally and factually justified.[8]

### 2. Psychological injury to victims

■ McAninch contends that the court's finding of extreme psychological injury is not supported by the record, and that it therefore did not constitute a valid basis for departure.

The presentence report contained information about the impact of the harassing conduct on the victims of the counts to which McAninch pleaded guilty, as well as on the victims of the dismissed counts. In justifying the proposed departure for psychological

---

8. We note that the first of the *Lira–Barraza* criteria is not strictly applicable to a guided departure such as this one where the Sentencing Commission has considered the circumstance in question and has provided expressly for departure.

injury, the report referred to individuals in addition to those who were the targets of the specific conduct charged in counts three, nine and ten.

The court also had before it with respect to this ground of departure letters from several victims detailing individual experiences of harassment. For example, the wife of the man who had been sent the threatening items that were the subject of count nine wrote that she had "never felt so vulnerable and helpless" in her life. (Presentence Report attachment (Williams letter) at 3.) "After receiving that letter, I would come home from work to find my daughter huddled in the corner of the sofa with a kitchen knife in her hand.... I felt it was entirely possible that the next step the harasser would take would be to confront us directly." (*Id.* at 2.) Some of the letters included in the presentence report were from the victims of dismissed counts.

The district court found that McAninch had harassed his victims to "an extreme degree.... placing them in extreme fear ... that the next mention of [McAninch], the next contact would be at the door." (S.T. at 40–41.) The court adopted the recommendation of the government and presentence report to depart upward pursuant to section 5K2.3 of the guidelines due to the psychological injury McAninch inflicted on those he chose to harass. In doing so, the court did not specify to which victims it referred.

The district court's desire to depart upward on this basis was understandable in view of the psychological trauma McAninch visited upon his victims, a consequence that was not necessarily reflected in the applicable offense level. Nonetheless, we cannot uphold this basis for departure because the court did not clearly limit its consideration of psychological injury to the counts of conviction, as is required under *Castro–Cervantes. United States v. Fine,* 975 F.2d 596, 602 (9th Cir.1992) (en banc) (explaining holding of *Castro–Cervantes*). In light of this determination, we do not address McAninch's concerns regarding the existence or extent of injury to particular victims or reach the *Lira–Barraza* factors.

### 3. *Racist motivation*

 McAninch submitted a written statement to the court in connection with his sentencing in which he explained his actions in part as follows:

> I committed these crimes due to the psychological problems I was and am experiencing....
>
> In the Spring of 1987 my sister told me she had married a [Peruvian] Indian man due to the fact that white men are sexually inferior to other men.... I became obsessed over the fact that women potentially viewed me as inferior....
>
> I honestly felt that if minority males (i.e. black men, hispanic men, indian men, etc.) were sexually superior to white men, it would hurt my chances of landing a woman. My problems were more sexual and psychological than racial. I am not a racist....

(E.R. 7 attachment (Statement of Donald McAninch) at 1–2.)

The district court considered but ultimately rejected McAninch's explanation of his behavior:

> I cannot tell whether or not [your problems] are racially motivated or whether they are delusional, as you indicate....
>
> The fact remains, to the outward appearance and to everybody who has observed the case or read about the case or knows anything about it, it appears to be a hatred crime, not a delusional crime.

(S.T. at 40.) The district court concluded that the racist nature of McAninch's actions warranted an upward departure. McAninch contends that the court's determination was erroneous because he was psychologically impaired when he committed the crimes in question.

A sentencing court may impose a sentence above the one prescribed by the guidelines if it finds that there was an aggravating cir-

cumstance not adequately taken into consideration by applicable guidelines provisions. U.S.S.G. § 5K2.0 (1991); *Lira–Barraza*, 941 F.2d at 746. The Sentencing Guidelines do not explicitly address racist motivation for criminal conduct.[9]

Although the race of the defendant can never be a ground for departure, *see* U.S.S.G. § 5H1.10 (1991), courts have, on occasion, considered the race of the *victim* in assessing whether an upward adjustment is warranted under section 3A1.1 because of the victim's particular vulnerability to racist acts. *See, e.g., United States v. Skillman*, 922 F.2d 1370, 1376–78 (9th Cir.) (increase of two levels under vulnerable victim section in cross-burning case warranted due to African–American family's particular susceptibility to such criminal conduct in predominantly white neighborhood), *cert. dismissed,* —— U.S. ——, 112 S.Ct. 353, 116 L.Ed.2d 275 (1991); *United States v. Salyer*, 893 F.2d 113, 115–16 (6th Cir.1989) (same). A vulnerable victim adjustment is not appropriate, however, unless the defendant "knew or should have known that a victim of the offense was unusually vulnerable due to age, physical or mental condition, or that a victim was otherwise particularly susceptible to the criminal conduct." U.S.S.G. § 3A1.1 (1991). Such an adjustment, therefore, is not available when the defendant cannot be shown to have had the requisite state of mind with respect to the vulnerability of the victim. Furthermore, because it turns on the status of the victim, rather than the actions of the defendant, section 3A1.1 is not applicable to all potential forms of racist conduct, such as, for example, an attack stemming from the perpetrator's misperception regarding an individual's ethnic background. Because it is not otherwise treated in the guidelines, we therefore agree with the district court that a defendant's racist motivation is a valid ground for departure.[10]

Next we consider the court's factual finding that McAninch was racially motivated. The judge acknowledged McAninch's psychological problems, but in the final analysis, she decided that his crime was not one of delusion, but of hatred. This finding was not clearly erroneous. The psychologist's report submitted by McAninch in connection with his sentencing noted that McAninch had reported no hallucinations or delusions, that his cognitive processes were intact, that he was of above average to superior intelligence, and that there was no evidence of "a formal thought disorder." (Certified Record 28 attachment at 6.) The acts charged in count nine, which included the mailing of a Ku Klux Klan oath and a photograph with a swastika

---

9. There are guidelines sections that address civil rights offenses, in which racial discrimination may be an element. *See* U.S.S.G. §§ 2H1.1–2H4.1 (1991). Though it does not differentiate among potential bases of discrimination, the introductory commentary to these sections explains that "[t]he addition of two levels to the offense level applicable to the underlying offense in this subpart reflects the fact that the harm involved both the underlying conduct and activity intended to deprive a person of his civil rights." U.S.S.G. ch. 2, pt. H introductory commentary (1991).

The civil rights guidelines did not apply in McAninch's case because he was not charged with civil rights violations.

10. In arriving at this conclusion, we note that this court has upheld the imposition of criminal liability for conduct involving racist animus. *See, e.g., United States v. Skillman*, 922 F.2d 1370 (9th Cir.) (defendant liable under civil rights statutes for burning cross on lawn of African–American family), *cert. dismissed,* —— U.S. ——, 112

S.Ct. 353, 116 L.Ed.2d 275 (1991); *United States v. Gilbert*, 813 F.2d 1523, 1528–31 (9th Cir.) (prosecution of defendant under Fair Housing Act for mailing racially derogatory and threatening communications to discourage placement of minority children in adoptive homes not precluded by First Amendment), *cert. denied,* 484 U.S. 860, 108 S.Ct. 173, 98 L.Ed.2d 127 (1987). The Supreme Court's recent decision in *R.A.V. v. City of St. Paul,* —— U.S. ——, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992), is consistent with these holdings. It acknowledges that a law directed against conduct rather than speech that incidentally "swe[eps] up" a "particular content-based subcategory of a proscribable class of speech" within its reach does not violate the First Amendment. *Id.* at ——, 112 S.Ct. at 2546. *See also Dawson v. Delaware,* —— U.S. ——, ——, 112 S.Ct. 1093, 1098, 117 L.Ed.2d 309 (1992) (sentencing court can consider defendant's racial hatred if it was related to murder) (citing *Barclay v. Florida,* 463 U.S. 939, 942–44, 103 S.Ct. 3418, 3421–22, 77 L.Ed.2d 1134 (1983) (plurality opinion)).

on it, embraced well-recognized forms of racial harassment. *Cf. United States v. McInnis,* 976 F.2d 1226, 1230–31 (9th Cir.1992) (racially derogatory items seized from defendant's home were evidence of racist motivation in case involving violation of Fair Housing Act). McAninch's own description of his conduct in his statement to the court, namely, that he wanted to intimidate minority men because he couldn't stand to see them with white women, can fairly be seen as an admission that his actions were racially motivated. The district court did not clearly err in rejecting McAninch's attempt to justify his racial animus with psychological excuses.

Finally, there is no indication that the district court looked beyond the counts of conviction in determining that the facts supported a departure for racial motivation. McAninch's statement to the court was a general explanation of his behavior that did not mention any of the dismissed counts; nor did the presentence report's justification for this departure refer to dismissed counts. The court's finding of racial animus was based on information properly before it.

### 4. *Degree of departure*

■ The government noted in its sentencing memorandum that a seven-point upward departure could be supported but did not press this position at the hearing. The district court adopted the presentence report's recommendation and departed upward only three levels from McAninch's offense level.

■ Ordinarily, we would have to remand where one of the court's grounds for departure was invalid because we would not be able to review the reasonableness of the extent of the departure. The sentencing court is obliged to set forth "a reasoned explanation of the extent of the departure," with appropriate analogies to the guidelines. *Lira–Barraza,* 941 F.2d at 751. For us to speculate as to which combination of factors led the court to impose a particular increase does not "assure that sentencing was, in fact, carried out in a proper fashion." *United*

States v. Cruz–Ventura, 979 F.2d 146, 151 (9th Cir.1992).

Nonetheless, under the harmless error rule established in *Williams v. United States,* —— U.S. ——, 112 S.Ct. 1112, 117 L.Ed.2d 341 (1992), we conclude that remand is unnecessary in this case. A remand is not required if "the reviewing court concludes, on the record as a whole ... that the error did not affect the district court's selection of the sentence imposed." *Williams,* at ——, 112 S.Ct. at 1121. Even if one of the district court's reasons for departure was invalid, the sentence can be reasonable "provided that the remaining reasons are sufficient to justify the magnitude of the departure." *Id.*

By virtue of application note 2 to section 3A1.2, which provided for at least a three-point increase because the President was a victim, McAninch's offense level could be no less than 16. The district court effectively imposed no increase for either of the other grounds for departure. In concluding that the error was harmless, we note that the government merely urges affirmance and does not take the position on appeal that the court should have departed more. We therefore have no occasion to remand for reconsideration on that basis. *See United States v. Turner,* 898 F.2d 705, 711 (9th Cir.) (where government fails to contest sentence on appeal, it waives any challenge to district court's miscalculation in defendant's favor), *cert. denied,* 495 U.S. 962, 110 S.Ct. 2574, 109 L.Ed.2d 756 (1990).

McAninch's sentence is **AFFIRMED.**