9 F.3d 1554
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Dennis Eugene HEARRON, Timothy Roy Hinger, Defendants-Appellants.
 Nos. 92-10634, 92-10635.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 5, 1993.
Decided Nov. 2, 1993.
 
 Before: HUG, FARRIS, and BRUNETTI, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Dennis Eugene Hearron's ("Hearron") and Timothy Roy Hinger's ("Hinger") cases were consolidated for this appeal. Hearron was convicted of conspiracy to possess and possession with intent to distribute marijuana and cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846. He was also convicted of using a firearm in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c). Hinger was convicted of conspiracy to possess and possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1). We affirm both convictions.
 
 I.
 
 3
 Appellant Hearron asserts that the district court improperly admitted evidence seized pursuant to an invalid search warrant. The district court found that although the affidavit in support of the warrant lacked probable cause, the evidence could be admitted under the good faith exception to the exclusionary rule. United States v. Leon, 468 U.S. 897 (1984). This decision was not error.
 
 
 4
 Whether the good faith exception to the exclusionary rule applies is subject to de novo review. United States v. Negrete-Gonzalez, 966 F.2d 1277, 1282 (9th Cir.1992). "The exclusionary rule was adopted to deter unlawful searches by police, not to punish the errors of magistrates and judges." Massachusetts v. Sheppard, 468 U.S. 981, 990 (1984) (quoting Illinois v. Gates, 462 U.S. 213, 263 (1983) (White, J., concurring in judgment)). The agent must manifest objectively reasonable reliance on the invalid warrant. Id. at 988. Obtaining the aid and approval of United States attorneys can exhibit good faith reliance. See United States v. Mendonsa, 989 F.2d 366, 369-370 (9th Cir.1993) (detective sought advice from county attorneys concerning substantive completeness of affidavit before submitting it to magistrate; evidence shows good faith reliance); United States v. Freitas, 856 F.2d 1425, 1431 (9th Cir.1988) (approval from government attorney coupled with neutral magistrate authorization demonstrates reasonable reliance).
 
 
 5
 Although the affidavit supporting the search warrant in this case was less than ideal, the customs agent did essentially all that was reasonably expected of him. The agent possessed background information on Hearron's prior drug dealing and his current association with drug dealers, sufficient to establish probable cause, even though not present in the affidavit. Additionally, Hearron was concealing his identity and fugitive status and attempting to live under an alias, thus further exhibiting probable drug-activity behavior.
 
 
 6
 Armed with this background knowledge, the agent took the affidavit to the United States Attorney's office before submitting it to the magistrate. Two attorneys reviewed the affidavit and made some changes to it. Following their approval, the agent then took the affidavit to the magistrate who also approved it. When neither the federal prosecutors nor the federal magistrate questioned him further on the contents of the affidavit, it was not unreasonable for the agent to subjectively assume that the warrant was valid. See United States v. Johns, 948 F.2d 599, 605 (9th Cir.1991), cert. denied, 112 S.Ct. 3046 (1992) (agents not required to disbelieve "experts"--a government attorney and a neutral detached magistrate). We conclude that possession of relevant background information, coupled with obtaining the assistance and approval of the United States attorneys and a neutral and detached magistrate, warrants application of the Leon good faith exception to the circumstances of this case.
 
 II.
 
 7
 Hearron's second argument is that the district court erred in denying his motion to suppress the evidence of his false identification because the officers obtained that information in violation of his Miranda rights. In Miranda, the Supreme Court held that "if a person in custody is to be subjected to interrogation, he must first be informed in clear and unequivocal terms that he has the right to remain silent." Miranda v. Arizona, 384 U.S. 436, 467-468 (1966). However, "not every question posed in a custodial setting is equivalent to 'interrogation.' " United States v. Booth, 669 F.2d 1231, 1237 (9th Cir.1981). "[T]he ultimate test for whether questioning constitutes interrogation is whether, in light of all the circumstances, the police should have known that a question was reasonably likely to elicit an incriminating response." Id. at 1238.
 
 
 8
 In this case, the officer asked Hearron for identification precisely to establish Hearron's identity. Assuming arguendo that Hearron was in police custody, the questioning did not constitute interrogation. The officer was not attempting to get Hearron to incriminate himself; rather, the identification information was necessary to assure that he was not picking up the wrong person. Absent evidence that the officer's questioning was reasonably likely to inculpate Hearron, such routine gathering of biographical data does not trigger constitutional protections. United States v. Gonzalez-Sandoval, 894 F.2d 2d 1043, 1046 (9th Cir.1990). See also United States v. Feldman, 788 F.2d 544, 554 (1986), cert. denied, 479 U.S. 1067 (1987). No Miranda violation occurred in this case.
 
 III.
 
 9
 Finally, Hearron contends that the district court erred in denying his motion for a directed verdict on the 18 U.S.C. § 924(c) charge. There is sufficient evidence to support a conviction if, " 'reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " United States v. Bishop, 959 F.2d 820, 829 (9th Cir.1992) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).
 
 
 10
 Hearron asserts that insufficient evidence existed to convict him of using a firearm in relation to a drug trafficking offense. While searching Hearron's residence for drug paraphernalia, the officers found the firearms in a closet in the only furnished bedroom in the house. The officers also found drugs and money in the residence. Sufficient evidence was available for the jury to determine that the firearms played a role in the drug trafficking. The firearms were adequately accessible in physical proximity to the drugs to constitute "use" in relation to a drug trafficking charge. See United States v. Torres-Rodriguez, 930 F.2d 1375, 1385 (9th Cir.1991) (firearm found between mattresses while searching defendant's residence); United States v. Torres-Medina, 935 F.2d 1047, 1050 (9th Cir.1991) (firearm found in crawlspace beneath house).
 
 IV.
 
 11
 Appellant Hinger contends that the jury did not have sufficient evidence to convict him on charges of conspiracy to possess and possession of narcotics. We do not agree. Once the conspiracy is established, evidence of only a slight connection to the conspiracy is sufficient to convict the defendant. United States v. Kenny, 645 F.2d 1323, 1335 (9th Cir.), cert. denied, 452 U.S. 920 (1981). "A defendant's knowledge of and participation in a conspiracy may be inferred from circumstantial evidence and from evidence of the codefendant's actions." United States v. Taren-Palma, 997 F.2d 525, 536 (9th Cir.1993).
 
 
 12
 Tracy Batorson, the Government's main witness, testified to evidence that connected Hinger to an apartment complex and a motel at times when alleged drug activity was taking place. Additionally, she testified that Hinger drove the marijuana supply from Toltec, Arizona to Tucson, Arizona, that a codefendant paid Hinger $5,000 from drug smuggling money as payment for assistance, and that Hinger worked with that codefendant on prior occasions. Finally, customs agents observed interaction between Hinger and several other known drug dealers. Reviewing this evidence in a light most favorable to the Government, there was sufficient evidence to convict Hinger of both charges.
 
 V.
 
 13
 Hinger next argues that the district court erred in denying his motion for sanctions. The district court's decisions on discovery matters are reviewable for abuse of discretion. United States v. Malquist, 791 F.2d 1399, 1402 (9th Cir.), cert. denied, 479 U.S. 954 (1986).
 
 
 14
 Hinger contends that the prosecutor engaged in improper conduct by allegedly advising the Government's main witness, Tracy Batorson, not to speak with defense counsel. We disagree. Both the prosecutor and Batorson deny that a blanket order was issued telling her not to speak at all with defense counsel. Additionally, the judge informed Batorson in a pretrial hearing that no party could instruct her not to speak with either side. "While the prosecution may not interfere with a witness's free choice to speak with the defense, we agree with the courts in other circuits that merely informing the witness that he may decline the interview is proper." United States v. Black, 767 F.2d 1334, 1338 (9th Cir.), cert. denied, 474 U.S. 1022 (1985). The district court did not abuse its discretion in denying Hinger's motion for sanctions.
 
 VI.
 
 15
 Hinger next argues that the district court erred in denying his motion to sever his case from Hearron's. This argument is without merit. A district court's decision to sever pursuant to Fed.R.Crim.P. 14 is reviewed for abuse of discretion. United States v. Cuozzo, 962 F.2d 945, 949 (9th Cir.), cert. denied, 113 S.Ct. 475 (1992). This circuit holds that " 'joinder is the rule rather than the exception.' " United States v. Monks, 774 F.2d 945, 948 (9th Cir.1985), quoting United States v. Armstrong, 621 F.2d 951, 954 (9th Cir.1980).
 
 
 16
 The primary consideration is "whether the jury can reasonably be expected to compartmentalize the evidence as it relates to separate defendants, in view of its volume and the limited admissibility of some of the evidence. The prejudicial effect ... is generally ... neutralized by careful instruction by the trial judge." United States v. Escalante, 637 F.2d 1197, 1201 (9th Cir.), cert. denied, 449 U.S. 856 (1980). In Hinger's case, the judge properly instructed the jury not to consider any evidence admitted after Hinger's involvement ended. This limiting instruction was given more than once. Additionally, the jury demonstrated its ability to compartmentalize the evidence by convicting three of the codefendants, and acquitting the fourth.
 
 VII.
 
 17
 Hinger also appeals his sentence. He contends that the district judge improperly enhanced his sentence two levels because he threatened a witness. This court reviews the district court's interpretation of the Sentencing Guidelines de novo and the court's factual conclusions for clear error. United States v. McAninch, 994 F.2d 1380, 1383 (9th Cir.1993). As Hinger left the courtroom, he said to Batorson, "That's it! You f--king piece of sh--!" Hinger does not dispute that he made the statement; he merely contends that it was not a threat because he did not threaten bodily injury and because the witness testified despite the putative threat. Neither of these contentions carries weight.
 
 
 18
 Section 3C1.1 of the Sentencing Guidelines provides that if the defendant "obstructs or impedes" justice, the sentence should be increased by two levels. The application notes set forth a list of non-exhaustive examples of conduct to which this section applies. The first example is "threatening, intimidating, or otherwise unlawfully influencing a codefendant, witness, juror, directly or indirectly, or attempting to do so." U.S.S.G. § 3C1.1, Comment., 3(a) (1991). Further, it is irrelevant to a finding of attempted obstruction of justice that the witness testified in spite of the threat. United States v. Jackson, 974 F.2d 104, 106 (9th Cir.1992). The district court's conclusion that the statement amounted to obstruction of justice was not clearly erroneous.
 
 CONCLUSION
 
 19
 The district court properly denied Hearron's motions to suppress the evidence seized during the search of his residence and the evidence of false identification. The court also properly denied Hearron's motion for a directed verdict. Additionally, the court did not err in denying Hinger's motions for sanctions and severance. Sufficient evidence existed to convict Hinger, and the court applied the Sentencing Guidelines appropriately.
 
 
 20
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3