**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                    No. 99-4736

SCOTT LEE SHARP,
Defendant-Appellant.

Appeal from the United States District Court
for the Middle District of North Carolina, at Durham.
William L. Osteen, District Judge.
(CR-99-82)

Submitted: April 20, 2000

Decided: July 12, 2000

Before LUTTIG, MICHAEL, and KING, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Marvin R. Sparrow, Durham, North Carolina, for Appellant. Walter
C. Holton, Jr., United States Attorney, Lisa B. Boggs, Assistant
United States Attorney, Joshua R. Taylor, Third Year Law Student,
Greensboro, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

**OPINION**

PER CURIAM:

Scott Lee Sharp was convicted after a jury trial of depositing a letter in the mail containing a threat against the life of the President of the United States, in violation of 18 U.S.C. § 871 (1994), and causing the postal service to deliver a written communication containing a threat to injure Chief Judge Frank W. Bullock, Jr., in violation of 18 U.S.C. § 876 (1994). Sharp raises various challenges to his convictions and sentences. For the following reasons, we affirm.

I.

Sharp first claims that his convictions were invalid because the district court failed to inquire, sua sponte, as to his competency to stand trial. However, the factual basis of his argument rests nearly exclusively on documents which were not submitted and incidents which did not occur until after Sharp was convicted. The only fact to which Sharp points that allegedly should have alerted the district court that Sharp was possibly incompetent, either before or during trial, is the single threatening letter which gave rise to both counts against Sharp.

A person is competent to stand trial if (1) he can"consult with his lawyer with a reasonable degree of rational understanding" and (2) he has a "rational as well as factual understanding of the proceedings against him." Penry v. Lynaugh, 492 U.S. 302, 333 (1989). The letter itself does not show a lack of factual or rational understanding of reality. While the letter is rambling and lacks cohesion, the meaning is clear and specific, and Sharp demonstrates an understanding of geography and current events. Because the letter does not reflect poorly on Sharp's ability to consult with his lawyer and to understand legal proceedings, the letter alone falls short of showing a lack of competency. In addition, Sharp's demeanor during trial was neither irrational nor unusual. Sharp consulted with his lawyer, spoke articulately to the judge, and demonstrated his understanding of the proceedings. According due deference to the district court, because it had the opportunity to observe Sharp's demeanor during trial, we find no error in the lack of a competency hearing.

2

II.

Sharp next contends that he was not competent to waive counsel for sentencing and that the court should not have accepted his request, even though it was emphatic and unequivocal. "Competency" in the waiver of counsel context is co-extensive with the"competency" necessary to stand trial. See Godinez v. Moran, 509 U.S. 389, 399 (1993).

At the time of the hearing on the motion to withdraw, the presentence report ("PSR") had been prepared. The PSR described a long history of mental and emotional problems, including two involuntary commitments to a mental health facility, the latest being in 1993. However, Sharp was never diagnosed as having a mental disease. While Sharp's mental and emotional diagnoses revealed that he was hostile, rude, uncooperative, aggressive, depressed, and immature, nothing in the PSR shows that Sharp was unable to understand and participate in legal proceedings.

In fact, Sharp had been arrested many times before, represented by counsel, and never found incompetent in any proceeding. After a breaking and entering arrest in 1994, he was referred for a mental diagnostic study, was found to be antisocial, but was not found incompetent to stand trial on the charges. Because the PSR did not show that Sharp was incompetent and because Sharp responded intelligently to the court's questions at the hearing, evincing an understanding of the proceedings and presenting his own arguments, we hold that the court did not err in permitting Sharp to represent himself at sentencing.

III.

Next, Sharp asserts that the district court erred in failing to hold an ex parte hearing on his motion for a psychiatric examination under 18 U.S.C.A. § 3006A(e) (West Supp. 1999), and in denying his motion. It is undisputed that the statute requires an ex parte hearing and that the court did not hold one. However, "[t]he manifest purpose of requiring that the inquiry be ex parte is to insure that the defendant will not have to make a premature disclosure of his case." Marshall v. United States, 423 F.2d 1315, 1318 (10th Cir. 1970). In this case, Sharp served his motion for a psychiatric examination on the Govern-

3

ment and did not object when the Government attorney was present. Because Sharp had already revealed his possible defense to the Government, the district court did not err in failing to consider the issue ex parte.

Regarding the merits of the motion, § 3006A(e) permits the appointment of an expert psychiatrist in cases where competency or insanity is an issue. The statute requires the district court to authorize § 3006A(e) services when the defendant is indigent and when the services of the psychiatric expert are necessary for an adequate defense. A court may refuse to authorize § 3006A(e) expert services on the ground that they are not necessary, if the court concludes that the defendant does not have a plausible claim or defense. See United States v. Fince, 670 F.2d 1356, 1357-58 (4th Cir. 1982). The decision to grant or deny a motion for services pursuant to§ 3006A(e) is committed to the sound discretion of the district court and may only be overturned upon a showing of abuse of that discretion. See United States v. Hartsell, 127 F.3d 343, 349 (4th Cir. 1997). To show reversible error in a district court's refusal to appoint an expert, a defendant must demonstrate that the court's refusal was prejudicial to his defense. See United States v. Perrera, 842 F.2d 73, 77 (4th Cir. 1988).

In his motion, Sharp stated that he needed a psychiatrist in order to challenge competency, file a motion to suppress, and file "any other motion." First, regarding competency, as discussed above, there was no viable issue necessitating an expert. Second, because the trial was already completed, any motion to suppress would have been irrelevant and, therefore, could not provide a basis for appointment of an expert. Finally, Sharp's assertion that there might be "other motions" was too general to show necessity under the statute. Accordingly, the district court did not abuse its discretion.

IV.

Sharp next asserts that the district court erred in denying his motion for a continuance of sentencing, which sought time to obtain medical records and information to assist in showing diminished capacity. A district court's decision to grant or deny a motion for a continuance is reviewed for an abuse of discretion. See United States v. Speed, 53

F.3d 643, 644 (4th Cir. 1995). Absent a showing that the denial substantially impaired the defendant's opportunity to secure a fair sentence, we will not vacate a sentence merely because a continuance was denied. See id. at 644-45. As discussed below, a downward adjustment based on diminished capacity was not available in Sharp's case. Accordingly, Sharp cannot show prejudice, and his claim of error fails.

V.

Under U.S. Sentencing Guidelines Manual § 3A1.2(a) (1998), a three level upward adjustment should be made if the victim was "a government officer or employee; a former government officer or employee; or a member of the immediate family of any of the above, and the offense of conviction was motivated by such status." Although Sharp's offense level was adjusted under this section, he does not challenge this adjustment. Application Note 2 of § 3A1.2(a) states as follows:

> Certain high-level officials, e.g., the President and Vice President, although covered by this section, do not represent the heartland of the conduct covered. An upward departure to reflect the potential disruption of the governmental function in such cases typically would be warranted.

Sharp challenges the court's upward departure of three offense levels under this Application Note.

Sharp contends that the district court erred by departing upward based on the fact that the victims of his crime were "high-level officials." First, Sharp asserts that the Chief Judge was not a high-level official. Second, he contends that, since an element of his crime was that the President was a victim, it was double counting to depart upward on this basis. Because Sharp did not raise these claims below, we may only review the district court's actions for plain error.

Both parties submit that there is no authority as to whether the Chief Judge of the Middle District of North Carolina is a "high-level" official within the meaning of the Application Note. As such, any

5

error in the district court's determination that the Chief Judge was a "high-level" official was not "plain."

Next, Sharp's double counting argument fails. The relevant comparison in determining whether there was double counting is between the applicable guidelines provisions, not between the guidelines provisions and the criminal code. See United States v. McAninch, 994 F.2d 1380, 1385 (9th Cir. 1993). Nothing in the Application Note discourages the departure when an element of the offense was the victim's "high-level" status.

In addition, Sharp's base offense level was set at twelve under USSG § 2A6.1 (threatening communications), which does not specifically incorporate the official victim or high-level victim factor.* Because the "high-level" victim status is not addressed in the guideline establishing Sharp's base offense level, there was no double counting in the calculation of Sharp's sentence. See United States v. Fann, 41 F.3d 1218, 1219 (8th Cir. 1994).

VI.

Finally, Sharp contends that the district court erred in failing to address his request for sentencing consideration under USSG § 5K2.13, p.s., based on his diminished capacity. However, § 5K2.13 specifically states that a downward departure based on diminished capacity is not permissible if the offense "involved actual violence or a serious threat of violence." Sharp has not argued that his threats were frivolous or factually impossible. Thus, Sharp's specific and explicit threats of violence foreclose any departure based on his mental condition under § 5K2.13.

Accordingly, we affirm Sharp's convictions and sentences. We dispense with oral argument, because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED
_____
*In fact, that section "includes a particularly wide range of conduct . . . [and] [f]actors not incorporated in the guideline may be considered by the court in determining whether a departure from the guidelines is warranted." USSG § 2A6.1, comment. (n.1).